ANDRÉ BIROTTE, JR.
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
DARWIN THOMAS
Ca. Bar No. 80745
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2740
Facsimile:   (213) 894-0115
Email: darwin.thomas@usdoj.gov

BRIAN H. CORCORAN
Member, DC Bar, No. 456976
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Facsimile: (202) 514-6770
E-mail: brian.h.corcoran@usdoj.gov

Attorneys for Plaintiff, United States

FILED
CLERK, U.S. DISTRICT COURT

AUG - 6 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

GWENN WYCOFF; and
FRANK OZAK,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil No. CV10 5856-JHN (PLAx)

**Complaint for Permanent Injunction and Other Relief**

      Plaintiff, United States of America, for its complaint against Defendants Gwenn Wycoff and Frank Ozak seeking a permanent injunction pursuant to I.R.C. §§

7402, and 7408 to prohibit them from further promoting a fraudulent tax scheme, states as follows:

1.     This action has been requested by the Chief Counsel of the Internal Revenue Service (IRS), a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to the provisions of 26 U.S.C. ("I.R.C.") §§ 7402, and 7408.

### Jurisdiction and Venue

2.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and I.R.C. §§ 7402(a) and 7408.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1396 because defendants Gwenn Wycoff and Frank Ozak are residents of Los Angeles, California, within this district, having their place of business and residence in Los Angeles.

### Defendants and Basic Facts

4.     Both Defendants are residents of Los Angeles, California. Mr. Ozak acts as general manager of the Kenzington Fund, an organization through which the Defendants have in the past promoted their illegal activities. He has previously represented himself, on business cards and in biographical descriptions posted to the internet, as an attorney, although the California Bar Association does not list him as admitted to practice in the state, nor does he appear to be admitted in any other state. Wycoff acts as trust administrator and/or protector for several of the abusive trusts described in more detail herein, besides being an impetus for their establishment. Both Defendants are heavily involved in the promotion, creation, and operation of the abusive trusts at issue in this lawsuit.

5.    As described in greater detail below, the Defendants jointly advise individuals and business operators about the benefits of establishing abusive "common-law" trusts, which they falsely claim will allow their customers to avoid the payment of federal income taxes. The trusts they help create (and also, in many cases, directly assist in the management and operation of) purport to hold an individual's personal as well as business assets. Through this, the Defendants assert, the trust, rather than the taxpayer, "owns" or comes to "own" the assets or business interests. The trusts then "manage" these assets for the customers, paying taxpayer expenses and providing them money when needed, as well as investing some monies placed in the trusts. Wycoff and Ozak frequently act as paid trustees for the trusts they urge and help their customers to create, and thus provide more than mere up-front assistance in creation of the trusts.

6.    Through management of the taxpayers' assets and funds, the trusts purport to distribute their income to certain named beneficiaries, to make it appear as if the trusts have no resulting tax liability. Such beneficiaries, however, prove to be illusory - off-shore entities with falsified addresses that are merely intended to create the appearance of legality.

7.    Ozak and Wycoff represent to customers that creation of such trusts allow individuals to "legally" avoid federal income taxation, because the trusts (rather than the taxpayers) own and control the trust's *res*. The Defendants' customers either do not file income tax returns, or file returns that suggest they have little or no income. The trust tax returns similarly show distribution of almost all trust income to other entities and thereby claim no income as well.

8.    In fact, however, these trusts are simply the lynchpin of an elaborate scheme to evade the payment of federal income taxes. In all instances, customers of the Defendants who have created such trusts continue to exercise control over

their trusts' assets and property, and merely use the legal fiction of the trusts to create an illusion that they have no taxable income.

9. Despite the blatant illegality of the trusts, Wycoff and Ozak have continually and repeatedly advised and guided their customers in the creation of these fraudulent common-law irrevocable trusts as a way to conceal assets and income. They do so through personal appearances at meetings of like-minded individuals, web-based publications, and the sale of two printed volumes they helped write under an assumed name, both volumes of which are replete with false statements about the taxability of trust and other income.

10. In addition, Wycoff and Ozak have intentionally and repeatedly failed to cooperate with lawful Internal Revenue Service investigations. They have gone so far as to take retaliatory action against employees of the IRS who are tasked with investigating the Defendants and their schemes, by filing frivolous administrative actions or lawsuits in order to deter investigation of their illegal conduct. And they specifically advise their customers not to cooperate in IRS investigations as well.

11. Because of Defendants' conduct, the Government has been repeatedly denied taxes otherwise owed to it by the Defendants' customers. The IRS has also expended unnecessary resources untangling the trusts and battling the Defendants' purely obstructive tactics.

12. In light of the above, the United States seeks a permanent injunction prohibiting Wycoff and Ozak from: (a) promoting the creation of these sham trusts and making false statements about the taxability of the trusts, (b) promoting any other investment, business venture, or other plan or arrangement and in connection therewith making false or fraudulent representations about federal tax benefits or treatment, (c) engaging in any other activity subject to penalty under I.R.C. §§ 6700 and 6701, or any other

penalty provision in the I.R.C., (d) causing other persons or entities to understate their federal tax liabilities and avoid paying lawfully owed federal taxes, (e) retaliating against lawful IRS investigations, and (f) engaging in any other conduct that interferes with the administration or enforcement of the internal revenue laws.

## Nature of Defendants' Scheme

*The Kenzington Fund*

13. The Defendants appear to have first latched onto the use of common-law trusts as a means of tax evasion after they personally created for themselves the "Kenzington Fund," an entity that was itself a common-law trust (and that they used for tax evasion), as well as an organization through which they initially promoted their ideas.

14. Wycoff and Ozak established the Kenzington Fund trust in 1997. Wycoff is currently the administrator and secretary of the Kenzington Fund, while Ozak is the general manager. A third party and close associate of the Defendants, George McCalip, acts as a trustee of the Kenzington Fund.

15. Wycoff and Ozak initially promoted their tax scheme via the Kenzington Fund's website, "www.kenzington.com." In 2004, however, after they became aware of the IRS's investigation into their activities, they shut that website down and began utilizing another website, "www.passingbucks.com" to promote their fraudulent advice and products. The registered owner of this new website is the Kenzington Fund Trustee, George McCalip.

16. The Kenzington Fund is associated with other known promoters of tax evasion schemes. Its 2003 Form 1041 income tax return identified its fiduciary as Noble Trust Services Co., P.O. Box F-42498, Freeport, Bahamas, and the fund's beneficiary as Equity Management Trust ("EMT") c/o Noble Trust

Services Co., P.O. Box F-42498, Freeport, Bahamas. These two entities were both vehicles through which James A. DiLullo, another promoter of tax-evasion schemes, conducted business from the State of Nevada. In 2007, Mr. DiLullo was permanently enjoined from promoting tax-avoidance schemes based upon fraudulent trusts, and is currently the subject of a bench warrant for his arrest for violating the terms of his injunction. *See United States v. James DiLullo*, No. 2:07-cv-00321 (D. Nev. Nov. 8, 2007) (order granting permanent injunction).

17.   Since its creation, the Kenzington Fund has routinely failed to file required federal tax forms and pay taxes due. It last filed an income tax return in 2003, which the IRS audited. That return reported income of $95,246.00, but an offsetting distribution deduction of $95,246.00 (purportedly distributed out to EMT), thus allowing the Kenzington Fund to report no taxable income. In fact, the IRS determined through its audit that the Kenzington Fund had never made any such distributions. Based in part on that determination, the IRS made a jeopardy assessment against the Kenzington Fund of $56,734. As of April 30, 2010, the Kenzington Fund owes unpaid taxes, plus penalties and interest, in the amount of $105,142.

*Dissemination of Wycoff and Ozak's Tax-Avoidance Scheme*

18.   Since establishment of the Kenzington Fund, and now through the "passingbucks.com" website, Wycoff and Ozak have promoted the creation of common-law trusts as a means of evading income taxes. On such websites, they have posted articles specifically advocating that individuals create common-law irrevocable trusts for these reasons.

19.   Wycoff and Ozak also offer for sale numerous printed materials that promote their trust-creation scheme. For example, the Kenzington website sold newsletters, reports, and common law trust books. Posted on that website was

an article entitled "Give It Away and Get It," written by Wycoff, as well as another article entitled "Own Nothing, Control Everything."

20. In addition, Wycoff and Ozak attend dinners and other gatherings where they make presentations to prospective customers to encourage them to participate in their trust scheme. In June of 2009, for example, Ozak made a presentation at the Karl Hess Club, a Los Angeles-based libertarian organization, and discussed in person the views expressed in the printed and published information they disseminate.

*"The Art of Passing the Buck"*

21. In 2008, the Defendants published and began to sell a two-volume work entitled The Art of Passing the Buck, which contains numerous glaringly false statements about the internal revenue laws. Wycoff and Ozak advise customers to purchase the books to obtain more information about the trust scheme they advocate. Wycoff and Ozak offer these books for sale via the "passingbucks.com" website as well as through seminars and discussions at which they speak; they have also been promoted on a radio show in 2008 by their associate Mr. McCalip. The first volume costs $39.95, with the second (which contains more detailed instructions for how to establish and make use of the trusts advocated by the Defendants) going up in price to $500.

22. The purported "author" of The Art of Passing the Buck volumes is Charles Arthur, but Mr. Arthur does not exist. The volumes were in fact written under that pseudonym by a "consortium" of individuals, including Wycoff, Ozak, and McCalip. Ozak himself is the general manager of Charles Arthur Enterprises, the volumes' publisher.

23. These two related volumes (and, in particular, the more costly second volume) provide a road map for the creation of the trusts through which Wycoff and Ozak's customers understate their tax liability. They discuss at length the

purported tax benefits of common-law trusts, and contain numerous instructions for setting them up. Although neither volume specifically mentions Wycoff or Ozak by name, both contain in the end pages contact information for "Charles Arthur Enterprises," along with an invitation to contact that entity to obtain consulting assistance in the creation and management of a trust.

24. Wycoff and Ozak also spread patently false information about the IRS in books they promote. For example, they claim in The Art of Passing the Buck that the IRS "is a foreign organization, based in Puerto Rico, and not part of the U.S. Government." Most problematic, the book falsely states that the IRS has no authority to collect money and that federal agents have no jurisdiction over common-law trusts. In this regard, the books falsely claim that the IRS cannot obtain records without a search warrant, when in fact the IRS can lawfully request records through civil summonses that can be enforced by court order, if necessary.

25. The books further highlight several factors the IRS considers in determining whether a trust is a sham, but ignore a fundamental requirement for a valid irrevocable trust: the true relinquishing of control over the assets placed into the trust by the taxpayer. In this respect, the works utterly fail to mention that a transfer to an irrevocable trust is invalid for tax purposes unless such control is relinquished, and instead advocates that customers merely take cosmetic steps to create the appearance of a relinquishing of control. Thus, the books instruct customers to change the recording deed for their homes, and to pay the mortgage through the trust, even though the taxpayers continue to occupy the homes as their beneficial owners.

26. The Art of Passing the Buck also falsely claims that instructions the IRS provides taxpayers regarding the taxability of trusts is incorrect. It incorrectly

states that distributions of trust income are deductible distributions of tax "to the point where little or no tax is due from the Business Trust." The books neglect to mention that distributions are only deductible if the trust documents require that all income be immediately distributed - or that distributions of trust income are taxable to the recipient.

27. All told, the numerous statements contained within both volumes of The Art of Passing the Buck relating to common-law trusts and their tax benefits go well beyond mere expressions of anti-government political animus. Rather, they constitute false, intentionally misleading, and/or deceptive commercial speech that this Court may regulate if not ban entirely. These statements all propose a commercial transaction: that taxpayers not merely set up common-law trusts, but purchase, at considerable cost, The Art of Passing the Buck to do so - and then directly engage Wycoff and/or Ozak once the trust has been created (as described in greater detail below). As such, the intent of this false and/or fraudulent speech about the nonexistent tax benefits of common-law trusts is, at bottom, to benefit both Defendants financially - not simply to "spread the word" about the Defendants' political views.

## Specific Instances of Defendants' Illegal Conduct

28. Through the above-mentioned avenues, Wycoff and Ozak advocate the creation of irrevocable common-law trusts that they falsely claim will allow their customers to lawfully avoid the payment of income taxes. Wycoff and Ozak assist their customers in the creation of such trusts, even though Ozak and Wycoff's customers frequently continue to have control over their assets and income. Once created, the Defendants act as trustees for the trusts and hold other supervisory or administrative roles, both as a means of

compensation as well as to ensure that the trusts serve the tax evasion purposes for which they were created.

29. Establishing a trust requires the creation of trustees. Some of the individuals appointed to act as trustees are connected to the trust's grantor in some way (such as a family friend or business associate), but Wycoff and Ozak themselves often serve as trustees in the common-law trusts they help create. The trustees open bank accounts that are used to pay the customer's expenses and bills. When the customer/grantor earns income through his business, he has payments made directly to his trust and the trustee merely writes a check back to the grantor as his salary. Customers are also typically paid some salary by the trusts (in addition to the trustees themselves). Wycoff and Ozak falsely tell their customers that this arrangement is beneficial from a tax standpoint, because individuals do not have to pay tax on income they receive that is paid directly to a trust. In actuality, individuals *are* responsible for income they earn.

30. Wycoff and Ozak also arrange, through third parties (Mr. DiLullo most often), for the preparation of income tax returns for the trusts they help create. Such tax returns claim the grantor's salary and other amounts as deductions. On their individual tax returns, the trusts' grantors routinely fail to claim the amounts they receive from their trusts as income. In turn, the trust returns report that the trust has distributed all of their income each year, negating any trust tax liability as well. However, when the IRS has investigated these distributions by attempting to trace the funds at issue, it has consistently discovered either that they did not in fact occur - that no money was in fact distributed, contrary to the claims in a trust's tax return - or that the distributions were made to other trust entities that, upon examination, turned out to be sham entities.

*The Anna Correy Family Trust*

31. In 2003, Dean "Rex" Wilson, a practitioner of naturopathic medicine, of Los Angeles, California was persuaded by the Defendants to create a trust after he saw an advertisement published by Wycoff and Ozak in a medical journal stating that it was possible for trust grantors to "own nothing, control everything." He accordingly created the "Anna Correy Family Trust" (as well as additional related trusts), transferring all of his personal business activity to that trust. Prior to the creation of the trust, Mr. Wilson reported the income he derived from his business practices on a Schedule C appended to his personal Form 1040 income tax return.

32. Wycoff and Ozak subsequently prepared the trust documents, created trust bank accounts, and did other work to set up several trusts on behalf of Mr. Wilson. Wilson agreed that Ozak and Wycoff would serve as trustees. One trust was to receive Mr. Wilson's business income, and issue checks for his individual salary and for his business rent and expenses. A second trust was established for the purpose of owning all of Wilson's personal assets, a step which Wycoff and Ozak said would insulate Mr. Wilson from creditors. Wycoff and Ozak informed Mr. Wilson that he would realize tax advantages from the creation of such a trust.

33. Once the trusts had been created, all income and expenses reported in connection with Mr. Wilson's business were reported on fiduciary income tax returns (Forms 1041) filed by the Anna Correy Family Trust. Mr. Wilson was that trust's general manager, and he continued to operate his own business. After 2003, however, Mr. Wilson ceased filing a personal Form 1040 income tax return, and thus did not report his own salary or income derived from his business activities.

34. Wycoff and Ozak had exclusive access to the trusts' bank accounts and used the trust's income to pay trust "expenses" as well as their fees. Those expenses included the payment of bills relating to Mr. Wilson's business. At the same time, Mr. Wilson submitted payments he received from his patients directly to the trust. The Trust thereupon paid Mr. Wilson a monthly salary, and if he needed any additional money, he merely took out a "loan" from the trust.

35. Besides paying the costs and expenses of Mr. Wilson's business, Wycoff and Ozak used money deposited with the trust to make at least two investments that they later informed Mr. Wilson had been so unsuccessful that the sum of the investments was completely lost. Mr. Wilson has been unable to recover these lost investment sums from the Defendants despite his requests for reimbursement.

36. Wycoff and Ozak also informed Mr. Wilson that the trusts could take deductions on their income tax returns that an individual could not take on his personal tax returns. They informed him that they would arrange for the preparation of the trust's tax returns. The IRS has determined that Mr. James DiLullo was the actual preparer of these tax returns, although DiLullo did not sign them as preparer. DiLullo is the owner of "Noble Trust Services, Co.", which was designated as a fiduciary of the trusts created by Wycoff and Ozak - and, as noted above, was enjoined from the promotion of his own tax avoidance scheme.

37. Even though these trusts were ostensibly created for Mr. Wilson's benefit, the Defendants designed the trusts to benefit them personally as well. One of the trust documents states that Mr. Wilson was to be fined $100,000 for discussing trust information with others (a provision intended not only to benefit themselves, but designed specifically to keep Wilson quiet about the Anna Correy Family Trust were he to be contacted about the Trust by the IRS). In

addition, another document provides that if the trust were dissolved, Ozak and Wycoff would get 51% of the assets or funds in the trust, rather than the customer/grantor or beneficiary (who were the source of the trust's assets to begin with).

38. The IRS examined the tax returns for the Wilson trusts for the 2005-2007 tax years. In so doing, it discovered that they all contained false deductions offsetting all of the reported trust income and reported zero overall tax liability. Mr. Wilson had never seen, nor had he signed, the tax returns Wycoff and Ozak arranged to have prepared. Indeed, he only learned that the IRS had opened an audit to investigate the trust's tax liability when he personally received a summons.

39. The returns that had been filed for the Anna Correy Family Trust reported all the income and expenses of Mr. Wilson's business (Natural Ways Systems) activity. The trust then reported distributing all the income received from the business to EMT, the purported beneficiary of the trust, as well as other trusts created by Ozak and Wycoff. (As noted above, EMT was also a designated beneficiary of the Defendants' Kenzington Fund trust and is connected to James DiLullo).

40. After audit and examination of the Anna Correy Family Trust tax returns, however, the IRS determined that the trusts should be disregarded for tax purposes - both because the trusts were sham arrangements with no economic substance, but also because they were grantor trusts whose income was taxable to Mr. Wilson individually. As a result, Mr. Wilson's income was adjusted to be that of the gross income of the business purportedly operated by the trust, and the IRS recalculated Mr. Wilson's actual tax liability.

41. The examination of Mr. Wilson's income taxes and the trusts opened on his behalf was completed in the summer of 2009. The IRS determined that Mr.

Wilson owed $48,834 in unpaid taxes to the Government. Mr. Wilson agreed to the changes to his tax returns.

*The Solomon Nabres Family Trust*

42. In the 1990s, Rita and George Serban of Bakersfield, California were audited by the IRS and found to owe additional taxes. In response to this event, they began exploring means of protecting their assets and income from further taxation. Through the assistance of their certified public accountant, Gary Tedder, they learned of the Kenzington Fund, and specifically Gwenn Wycoff and Frank Ozak, and the trust arrangements they promoted.

43. Thereafter, in 1998, Wycoff and Ozak helped the Serbans set up three related trusts: the Solomon Nabres Family Trust, the Solomon Family Trust, and the Hagar Family Trust. Rita Serban was established as the three trusts' Executive Secretary, and George Serban their General Manager.

44. Through the creation of these trusts, the Serbans allocated income and assets relating to the Serbans's business (an entity that installs and distributes public audio systems to businesses) to the trusts. These trusts in turn purportedly invested the monies, maintained the assets and properties they held, and made distributions of their income to Serban family members as well as additional entities.

45. Wycoff and Ozak provided substantial assistance in the creation of the trusts. The Kenzington Fund also received payments from the Serbans for its initial assistance in the trusts' creation. Ms. Wycoff and Mr. Ozak attended quarterly and yearly trustee meetings of each trust, and were compensated for this involvement.

46. In addition, the Kenzington Fund recommended to the Serbans's CPA that they use James DiLullo to assist them with tax returns for the trusts. To this end, DiLullo reviewed and filed the trusts' Form 1041 income tax returns (prepared

by Mr. Tedder) until 2004. They also recommended Mr. DiLullo as a potential source of good off-shore investments for trust proceeds. The Serbans thus listed EMT as a minor beneficiary of the trusts to enable this, although ultimately the Serbans did not opt to have the trusts make such investments.

47.   In 2005, the IRS examined the Serbans' income tax returns and subsequently learned about the trusts they had established. Through the examination and audit, the IRS discovered that despite the purported separation between the trust and the Serbans, in fact George Serban had complete control at all times over the activities of the trust, including but not limited to check-signing authority, management of the trusts's operations, and direction of the disposition of trust income, including investment decisions. In addition, the IRS investigation revealed that entities designated by the trusts as recipients of income distribution frequently had off-shore addresses that, upon checking, did not exist for that entity, or multiple post office box designations that could not be confirmed by the U.S. Postal Service.

48.   Through the interview of the Serbans's CPA, Mr. Tedder, the IRS learned that Wycoff and Ozak had not only helped create and manage the trusts, but had also provided them with help in resisting initial efforts by the Government to investigate the trusts.

49.   The IRS on audit determined that all three Serban trusts were shams. George and Rita Serban subsequently settled the matter, agreeing to tax deficiencies and penalties that totaled in excess of $900,000.

*The Sterling Paladin Family Trust*

50.   In 2008, the IRS examined the 2005 and 2006 tax returns filed by the "Sterling Paladin Family Trust." Those returns are characterized by many of the same suspicious features reflected in the trusts set up by Wycoff and Ozak for Mr. Wilson.

51.  The Sterling Paladin Family Trust was created on March 2, 2002. It purports to be a family asset management entity established by Heidemarie Kauahikaua. Ozak was designated as a trustee of this trust.  The trust's beneficiary, and the entity to which it purportedly distributed all of its income was EMT- the same beneficiary of other trusts created at the instigation of the Defendants.

52.  Through examination of the Sterling Paladin Family Trust, however, the IRS learned that it had made no cash distributions to EMT in the 2005 or 2006 tax years - contrary to the representations made in the trust's tax returns.  EMT's own fiduciary income tax return only reported scheduled K-1 income in 2006, and none in 2005.  EMT itself reported distributing all income received from the Sterling Paladin Family Trust to other layered trusts domiciled in foreign countries (which did not file federal income tax returns).  From this arrangement, the IRS determined that EMT was simply part of a tiered trust arrangement designed solely to circumvent the tax structure and evade tax liability.

53.  Another suspicious characteristic of this trust was the P.O. Box it gave as its address - an address in the Bahamas and the same used by Ozak and Wycoff for the Anna Correy Family Trust as well as other trusts created by Ozak and Wycoff.  Yet the IRS was unable, despite diligent efforts, to reach any individual through this address.  Indeed, after a more thorough search via the IRS tax attaché for the Bahamas, the IRS determined that there was no record of the "Sterling Paladin Family Trust" having ever rented the relevant post office box.

54.  The 2005 and 2006 Form 1041 income tax returns prepared for the Sterling Paladin Family Trust reported income of $162,242 in 2005 and $246,555 in 2006.  They also claimed a deduction for income distribution, reducing the trust's income to zero for both tax years.

55. As a result of the audit, the IRS concluded that the Sterling Paladin Family Trust was merely an abusive arrangement intended to evade tax liability, much like the Anna Correy Family Trust, and accordingly made a jeopardy assessment of $238,285 against this trust in 2009.

*Trusts Created for the Benefit of the Defendants*

56. In addition to promoting to their customers the creation of sham trusts as a means of tax avoidance, the Defendants have also created sham trusts to assist them in tax avoidance.

57. There are at least two such trust entities that the Defendants appear to have created or utilized for their own benefit. Besides the Kenzington Fund trust discussed above, Wycoff created the Gypsy Spirit Trust (Wycoff also serves as its general manager, with Ozak acting as its executive secretary). This trust uses the same false post office box in the Bahamas that they previously used for the Anna Correy Family Trust, as well as by their confederate DiLullo to conduct his tax-avoidance activities.

## **Frivolous Lawsuits and Retaliatory Conduct**

58. In connection with their promotion of sham common-law trusts, the Defendants inform their customers to actively obstruct legitimate IRS investigations. At the same time, in response to such investigations the Defendants have themselves made frivolous administrative as well as legal claims against IRS employees in order to stifle legitimate efforts by the Government to investigate their illegal conduct.

59. For example, in 2004, in connection with the audit of the Kenzington Fund's 2003 tax return, Revenue Agent Susan Lee issued an administrative summons to Alliance Bank requesting the trust's bank records. In response, Wycoff filed a frivolous lawsuit seeking damages and an injunction against Revenue Agent

Lee. *Gwenn H. Wycoff v. Susan Lee, et al.,* No. CV04-7250-GPS, U.S.D.C. for C.D. Cal. The lawsuit was eventually dismissed, but only after the Government had expended unnecessary time and resources in addressing the groundless claims asserted in the action. The Defendants' close associate, McCalip, engaged in similar tactics against Revenue Agent Lee in 2007. *George McCalip v. Susan Lee, et al.,* No. CV07-6571-CAS, U.S.D.C. for C.D. Cal.

60.   The indenture agreements governing the trusts that Wycoff and Ozak create all require trustees and trust managers to keep private their trust's dealings unless permitted to disclose information by the board of trustees. But they have also counseled their customers (in The Art of Passing the Buck and elsewhere) to incorporate an "Oath of Privacy" in the trusts they create. They falsely tell their customers that this oath allows persons with knowledge of trust business who have taken the oath to refuse to provide requested information about the trusts to federal agents and other government personnel. This helps "silence" their customers from disclosing information to entities like the IRS (based on the frivolous concept that neither the Government nor a court of law can compel the violation of such an oath).

61.   The Defendants have even gone so far as to include penalties of up to $100,000 for any trustees, trust officers, or managers who violate this "Oath of Privacy." Because Wycoff and Ozak's customers are usually designated as trustees or trust managers (so that they can continue to exercise control over the trusts), such penalties apply to them - and are intended to keep them from disclosing information about the trusts if they are contacted separately by the Government. Minutes from trustee "board meetings" held for the trusts the Defendants formed for both Rex Wilson and the Serbans reflect that in each

case, the Defendants prepared such an oath in writing and had the trust's grantors, plus all trustees and trust managers, sign the document.

62.    In addition, Wycoff and Ozak have encouraged their customers to interfere with IRS investigations. On at least one occasion, Wycoff sent to a customer a memo stating that the customer did not have to respond to letters from the IRS. Wycoff further requested that the customer refer all such IRS correspondence to her at the Kenzington Fund. The Defendants have improperly advised their customers that the "oath of privacy" permits this obstruction.

63.    The Art of Passing the Buck also advises trust creators to keep trust beneficiaries ignorant of the assets and investments the trust has. This is done so beneficiaries will be unable to answer questions posed by law enforcement agents investigating the trusts.

64.    Wycoff and Ozak rely on this secrecy as a grounds for failing to send out statements or documentation concerning the trust investments or assets. Because the trust beneficiaries (who are often the grantors themselves) are kept ignorant of the trusts' income, expenses, and investments, they are often unaware when the Defendants have made "investments" for which no returns are obtained. To their detriment, they trusted Wycoff and Ozak to handle such matters for them.

65.    The Defendants' publications further inform readers that only trustees should "deal with agency officials," and that they should refer all correspondence to the trustees. This allows Wycoff and Ozak (who are typically named as the trustees of their customers' trusts) to interfere with lawful IRS investigations and thereby attempt to shield their customers.

## Harm to the Government

66.    Wycoff's and Ozak's conduct has deprived the Government of substantial tax revenue. In the past six years, the IRS has either audited directly the tax returns of trusts created by, or with the assistance of, Ozak and Wycoff (including their own Kenzington Fund trust return), or has reviewed the returns of such trusts in connection with an individual taxpayer's audit. In four such instances, the IRS has either directly determined that the trust at issue was a sham (where the grantor's identity was known) and consequently ruled that the underlying taxpayer owed unpaid income taxes, or (because the taxpayer accepted the changes before the IRS was required to make an express determination about the trusts in question) simply settled the matter on terms requiring the taxpayer to satisfy substantial amounts in unpaid taxes and penalties.

67.    As of April 30, 2010 the total amount of tax deficiencies assessed in these four cases involving Wycoff and Ozak's promotion of common-law trusts is $1,192,212.

68.    Besides harm to the Government, the taxpayers who have been "assisted" by the Defendants are themselves potentially subject to large penalties, for erroneous claims on their returns which can amount to as much as 20 percent of the excessive refund claimed. *See* 26 U.S.C. § 6676.

## Count I - Injunction under I.R.C. § 7408

69.    The United States incorporates by reference the allegations in Paragraphs 1 through 68.

70.    Section 7408, I.R.C., authorizes a district court to enjoin any person from further engaging in conduct subject to penalty under either I.R.C. § 6700 or § 6701, if injunctive relief is appropriate to prevent recurrence of that conduct.

71.    Section 6700, I.R.C., provides that a penalty will be imposed against any person who organizes or assists in the organization of a partnership or other investment plan or arrangement, or participates in the sale of an interest in an entity or plan, and (a) knowingly makes, or causes to be made, a false or fraudulent statement as to the allowability of a deduction or credit, the excludability of any income, the securing of another tax benefit, because of an interest held in the entity or because of his participation in the plan, or (b) makes a gross valuation overstatement as to any material matter.

72.    Section 6701, I.R.C., imposes a penalty on any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document, knowing or having a reason to believe that it will be used in connection with any material matter arising under the internal revenue laws, and knowing that if so used it would result in an understatement of another person's tax liability.

73.    Wycoff and Ozak promote, assist in, and preside over the creation of sham common-law trusts as a means of diminishing, if not eliminating entirely, the actual taxes owed by their customers, and/or as a mechanism for shielding their customers' actual income from the Government. This is the entire purpose for creation of these trusts. They provide their customers with a road map for creating the trust, give advice on how they should be utilized, and also assist in the management of the trusts in many cases by acting as trustees.

74.    In addition, the Defendants promote the trusts simply as a means of obfuscating their customers' income stream, through the designation of false beneficiaries and trusts-within-trusts. The trusts are intended to create the false

impression that they, rather than their grantor/creators, own and control the underlying taxpayers' assets and income, when that is not the case. The convoluted nature of the trusts the Defendants establish help to shield taxable income from the Government.

75. As a product of their promotion of the creation of such sham trusts, the Defendants also arrange for the preparation of fiduciary income tax returns for their customers' trusts that reflect significant understatements of their customers' actual income tax owed, by falsely claiming that all trust income has been distributed when that is not the case. Many if not most of their customers cease filing individual returns entirely, based on the belief (whether honestly or disingenuously held) that they no longer need do so given the existence of the trust. The income tax returns prepared for the trusts at issue falsely report that they have distributed all income they receive as well - although the reported distributions are difficult if not impossible to trace or verify.

76. The Defendants not only propagate false and fraudulent information about the tax laws through direct contact with customers, and through the direct assistance they provide customers in setting up, and then operating, the common-law trusts they promote, but also more generally through the sale of their The Art of Passing the Buck books and other publications for sale and/or published on the Internet. These publications are replete with false and fraudulent statements about the federal income tax benefits of establishing common-law trusts. The publications do not merely contain expressive political (if incorrect) speech, but instead commercial speech the purpose of which is to propose commercial transactions that will benefit the Defendants directly as well as their customers. Wycoff and Ozak (through Charles Arthur Enterprises) self-publish and sell The Art of Passing the Buck for the very

purpose of advertising to potential customers their expertise in creating and managing common-law trusts.

77. In engaging in the above-referenced conduct, Wycoff and Ozak unquestionably know, or have reason to know, that the advice they provide their customers about the tax advantages of the trusts they create is false and fraudulent. They also know, or have reason to know, that the promotion activities they engage in result in the material understatement of their customers' tax liability.

78. Accordingly, Wycoff and Ozak have engaged in conduct subject to penalty under I.R.C. §§ 6700 and 6701, and are subject to an injunction under I.R.C. § 7408.

79. Sections 7402 and 7408, I.R.C., authorize a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws. Here, an injunction is appropriate given the continual and/or repeated nature of the Defendants' misconduct. That, plus the vehemence with which they defend their activities (reflected every time they frivolously assert that the Government's investigation of them is improper), suggests that they see no harm in their misconduct, and will continue to engage in it absent an injunction.

## Count II - Injunction under I.R.C. § 7402

80. The United States incorporates by reference the allegations contained in Paragraphs 1 through 79.

81. I.R.C. § 7402 authorizes the Court to issue an injunction or other judgment that is necessary or appropriate for the enforcement of the internal revenue laws.

82. I.R.C. § 7402(a) authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

83. The Defendants have substantially interfered with the enforcement of the internal revenue laws by promoting the creation of sham trusts, as well as their more broad propagation of completely false information about the federal tax laws through the publication and sale of their books.

84. As a result of Defendants' misconduct, their customers have failed to file proper tax returns and consistently understated their actual tax liability.

85. The Defendants' conduct results in irreparable harm to the United States and to the public. There is no adequate remedy at law for their misconduct.

86. The Defendants' conduct interferes with the proper administration of the Internal Revenue Code because it results in frivolous filings with the IRS that hinder the IRS's ability to determine the correct tax liabilities of Defendants' customers.

87. The Defendants also directly interfere with the IRS's efforts at tax administration through the repeated filing of retaliatory but frivolous claims and lawsuits whenever the Defendants' conduct is investigated. And the Defendants falsely instruct their customers that they themselves need not cooperate with legitimate and lawful attempts by the IRS to investigate the trusts created at the instigation of the Defendants.

88. Unless enjoined by this Court, the Defendants will continue to promote and administer their tax-fraud scheme.

89. Under I.R.C. § 7402(a), the United States is entitled to injunctive relief to prevent the recurrence of this misconduct.

WHEREFORE, Plaintiff, the United States of America, prays for the following relief:

A.      That the Court find that the Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6701 and that, under 26 U.S.C. §§ 7402 and 7408, injunctive relief is appropriate to bar them from engaging in such conduct;

B.      That the Court find that the Defendants have engaged in conduct that substantially interferes with the enforcement and administration of the internal revenue laws, and that, pursuant to 26 U.S.C. § 7402(a), injunctive relief against them is appropriate to prevent the recurrence of that misconduct;

C.      That this Court, under 26 U.S.C. §§ 7402 and 7408, enter a permanent injunction prohibiting the Defendants and their representatives, agents, servants, employees, and anyone in active concert or participation with them, from directly or indirectly by means of false, deceptive, or misleading commercial speech:

(1)     Organizing or selling tax shelters, plans or arrangements that advise or assist taxpayers to attempt to evade the assessment or collection of such taxpayers' correct federal tax;

(2)     Engaging in any other activity subject to penalty under 26 U.S.C. § 6700, including organizing or selling a plan or arrangement and making a statement regarding the excludability of income or securing of any other tax benefit by participating in the plan that they know or have reason to know is false or fraudulent as to any material matter;

(3)     Engaging in any activity subject to penalty under 26 U.S.C. § 6701;

(4)   Promoting the false belief, whether through direct representations or in printed publications, that individuals may lawfully create and utilize common-law trusts as a means of eliminating if not greatly reducing their income tax liabilities; and

(5)   Directly or indirectly organizing, promoting, marketing, or selling any plan or arrangement that advises or encourages taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the use and/or creation of common-law trusts as a means of eliminating if not greatly reducing their income tax liabilities;

D.   That, under 26 U.S.C. § 7402, this Court enter a permanent injunction prohibiting the Defendants from using or creating any sham trusts for themselves or others that have the effect or are employed to violate the law in any means or fashion designated in Paragraph C above;

E.   That, under 26 U.S.C. § 7402, this Court enter an injunction requiring the Defendants to contact by mail (and also by e-mail, if an address is known) all persons who have purchased from them any products, services or advice associated with the false or fraudulent tax scheme described in this complaint in the past five years and inform those persons of the Court's findings concerning the falsity of Defendants' prior representations and attach a copy of the permanent injunction against the Defendants;

F.    That, under 26 U.S.C. § 7402, this Court order the Defendants to provide to the United States a list of all persons who have purchased their products, services or advice in the past five years;

G.    That this Court allow the government full post-judgment discovery to monitor the Defendants' compliance with the injunction; and

H.    That this Court grant the United States such other and further relief as the Court deems just and appropriate.

August 5, 2010

Respectfully submitted,

ANDRÉ BIROTTE, JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

DARWIN THOMAS
Assistant United States Attorney

BRIAN H. CORCORAN
Member, DC Bar, No. 456976
Trial Attorney, Tax Division
U.S. Department of Justice

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Jacqueline Nguyen and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV10- 5856 JHN (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

COPY

Darwin Thomas (SBN 80745), Assistant United
States Attorney
300 North Los Angeles Street, Room 7211
Los Angeles, CA 90012
Telephone: (213) 894-2740
Facsimile: (213) 894-0115

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF(S)<br>v.<br>GWENN WYCOFF; and FRANK OZAK<br><br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10 5856-JHN(PLAx)**<br><br><br>**SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
DARWIN THOMAS                                          , whose address is:

300 North Los Angeles Street, Room 7211
Los Angeles, CA 90012

an answer to the  ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __21__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: ___- 6 AUG 2010___

By: ____MARILYN DAVIS____
Deputy Clerk,

SEAL

*(Seal of the Court)*

CV-01A (01/01)                                   **SUMMONS**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
UNITED STATES OF AMERICA

**DEFENDANTS**
GWENN WYCOFF; and FRANK OZAK

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

United States Attorney Office, DARWIN THOMAS, AUSA
300 N. Los Angeles St., Room 7211, Los Angeles, CA 90012
Tel: (213) 894-2740  Fax: (213) 894-0115

**Attorneys (If Known)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No          ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Pursuant to 26 U.S.C. ("I.R.C.") §§ 7402 & 7408

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury- Med Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☑ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609.

---

## CV10 5856

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                        CIVIL COVER SHEET                                        Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.   Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.   Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.   For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.   Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.   SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 8/5/2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |