Case 2:10-cv-05856-JHN-PLA    Document 10-15    Filed 10/08/10    Page 1 of 10   Page ID #:204



**Advanced Principles of Trust Construction, the Privacy of Contracts, Education of Trustees, with Emphasis on Leadership and Working Within the Adverse System.**

# THE ART OF PASSING THE BUCK

## VOL. TWO

### TRUST BLUEPRINTS

FOR THE SERIOUS STUDENT AND PROFESSIONAL

## CHARLES ARTHUR

Case 2:10-cv-05856-JHN-PLA    Document 10-15    Filed 10/08/10    Page 2 of 10   Page ID #:205

receive more Trust Capital Units. There is usually no such equivalent provision in a Statutory Trust.

You also place into the Trust the initial corpus to become an Exchanger and receive more TCUs.[17] Any earnings from the exchanged asset(s) are no longer taxable to you except when you cash out the TCUs. There is a strong possibility that you may never do this, as it may be a taxable event. You may also pass on your TCUs to your Beneficiaries.

The Grantor of a Statutory Trust transfers the assets into the Trust. Taxes may apply.

As outlined in Volume I, Grantors may retain significant control within the Trust, although the Trustees own the assets. The Grantor can decide whether to treat revenues as income or corpus and when or whether to distribute to the Beneficiaries.[18] This provision is uncommon in Statutory Trusts. We believe this is because the information has been obscured.

### Exchanger

This section does **not** apply to Statutory Trusts.

Anyone placing assets into a Trust in return for TCUs becomes an Exchanger. The most common reasons for becoming an Exchanger are to provide financial security for children, aged parents or others and preserving assets for future generations. The Trustees may allow Exchangers to keep use of the property in exchange for services to the Trust. Since all Trustees have TCUs, and thus a stake in the Trust, anyone who exchanges personal assets to add to the Trust will find motivated allies to help build a strong financial base.

Often, grandparents join in to add assets to the corpus to ensure the growth of the Trust for the grandchildren. Brothers and sisters may also decide to join this group endeavor by adding separate Trusts under the management organization. We handle Trust interface in a later chapter.

Over time a Trust may have a long list of Exchangers, and some TCUs may be exchanged into other Trusts.

---

17      See Appendix H for exchanges into Trust.

18      *IRC §674.*

24

Case 2:10-cv-05856-JHN-PLA   Document 10-15   Filed 10/08/10   Page 3 of 10   Page ID #:206

taxes for 1996 and $49,836 for 1997. Penalties took the total to $130,736 (plus interest) for 1996 and $88,675 (plus interest) for 1997.[87]

Mr. Patridge lost. The judges declared his argument frivolous. Using ten pages to express their total disapproval of methods and procedures, they discuss tax law in brief. This situation was so outrageous, the judges considered sanctions.

## When is a Grantor Taxable?

IRS personnel decide when an Irrevocable Trust is used as a Grantor Trust by how external documents are filed. For example, under whose name is the property recorded at the County Recorder's Office? Does the Grantor have enough cash flow to pay the mortgage? In a scam Trust, the Grantor often shows no income, yet pays the mortgage. Once there is a suspicion of misuse, the IRS launches an investigation.

By sending out a letter of inquiry, the IRS tests to see if there is an Adverse Trustee. The response to the letter alerts the IRS about the knowledge of the Trustee. If answered by the Grantor, this begins an inquiry. If the Trustee gives too much information, showing a sign of ignorance or weakness, then there will be follow up. There can be follow up anyway, just because the agent is misinformed concerning privacy and Trust structuring. Often, there is little to no training of IRS agents. They harass due to their own ignorance of, not only the Internal Revenue Code, but the Bill of Rights.

It is essential that a real Board of Trustees functions. In one of the cases below, the Grantor became the Trustee. Documents proved that he did not manage the estate for his own gain. We feel that when the Grantor becomes the Trustee, a red flag goes up, and the Grantor is then subject to inquiry. After the Trust has performed independently for at least three years, preferably five years, and the Grantor has enough training to handle the IRS, then the Grantor could become a Trustee.

Reformatted from the original IRS text downloaded from the Internet, the wording of the following three case studies has not changed.

---

[87]   *United States of America v. Denny R. Patridge*, No. 06-3635 Appeal from the United States District Court for the Central District of Illinois. No. 04-20031-001—Michael P. McCuskey, Chief Judge. Argued September 5, 2007—Decided November 14, 2007.

## Chapter 15: Head Scratchers

Wham v. Commission of ternal Revenue, 142 F. 2nd 996 (2nd Cir. 1944)

rgue v. Commissioner, F.2d 845, 846 (9th Cir. 2); Lazarus v. Commissioner, 513 F.2d 824 (9th . 1975); Bixby v. Commissioner, 58 T.C. 7575 2); Samuel v. Commissioner, 306 F.2d 682 (1st Cir. 1962)

IRC 7701 (1) (45) NONRECOGNITION TRANSACTION

Stern v. Commission of rnal Revenue, 747 F.2d 555 (1984)

**W**hen property analyzed, this advice from the IRS about Trusts, simply does not make any sense. Using terms inappropriate to the described events, and choosing Trusts incredibly off course gives even the most studious a headache. We feel Revenue Notice 97-24 offers a great opportunity to air out the "dirty laundry."

Remember, the IRS is not interested helping lower your taxes. More than a few have heard this when calling IRS offices, "It is not our job to help you with your taxes," or "It is not our job to help you reduce taxes. Please give me the form number."

Let us see what creative gobbledegook has been produced here.

### Omissions

In Revenue Notice 97-24, April 21, 1997 the IRS gives five major examples of Trust arrangements to warn people away from getting a Trust. There have been several important facts left out of these descriptions. In this chapter and the following one, we take you sentence-by-sentence through its explanation to show you what has been omitted.

### The Business Trust

According to the IRS:

> The Business Trust. The owner of a business transfers the business to a trust (sometimes described as an unincorporated business-trust) in exchange for units or certificates of beneficial interest, sometimes described as units of beneficial interest or IBIs (trust units). The business trust makes payment to the trust unit holders or to other trusts created by the owner (characterized either as deductible

159

Case 2:10-cv-05856-JHN-PLA Document 10-15 Filed 10/08/10 Page 5 of 10 Page ID #:208

# Art of Passing the Buck, Volume II

business expenses or as deductible distributions) that purport to reduce the taxable income of the business trust to the point where little or not tax is due from the business trust. In addition, the owner claims the arrangement reduces or eliminates the owner's self-employment taxes on the theory that the owner is receiving reduced or no income from the operation of the business. In some cases, the trust units are supposed to be canceled at death, or "sold" at a nominal price to the owner's children, leading to the contention by promoters that there is not estate tax liability.

The following sentence is true:

The owner of a business transfers the business to a trust (sometimes described as an unincorporated business trust) in exchange for units or certificates of beneficial interest, sometimes described as units of beneficial interest or UBIs (trust Units).

The following sentence is misleading:

The business trust makes payments to the trust unit holders or to other trusts created by the owner (characterized either as deductible business expenses or as deductible distributions) that purport to reduce the taxable income for the business trust to the point where little or no tax is due from the business trust.

The correct way to word this is:

The business Trust <u>disburses its profits</u> to the Trust unit holders or to other Trusts created by the Grantor (not owner) <u>which is</u> a deductible distribution that <u>can</u> reduce the taxable income of the Business Trust to the point where little or no tax is due from the Business Trust.

The following sentence applies to a scam Trust:

In addition, the owner claims the arrangement reduces or eliminates the owner's self-employment taxes on the theory that the owner is receiving reduced or no income from the operation of the business.

The correct way to word this is:

The person who exchanged the business into the Trust is no longer the owner, and he or she received Trust Capital Units, thus giving control to the Board of Trustees.

Should that person remain involved with the Trust, he or she would be a contractor or an employee of the Trust. If working as an independent contractor, he or she is responsible for the self-employment taxes and income taxes. If a person remains as an employee, then the Trust deducts the employment taxes from wages. Any Exchanger receiving a distribution is responsible to pay taxes thereon.

The last sentence applies to a scam Trust:

> In some cases, the trust units are supposed to be canceled at death, or "sold" at a nominal price to the owner's children, leading to the contention by promoters that there is no estate tax liability.

The correct way to word this is:

The Trust Capital Units received in exchange for the business cannot be transferred by the business owner, who is now an Exchanger. This Exchanger can request in writing the Units be transferred to the children or others at the time of his or her death (or at any time), but it is up to the Board of Trustees as Exchangers have no voting power, and are subject to the decisions of the Board of Trustees. The assets in the Trust are always owned by the Trust and not by the Exchangers or the Beneficiaries; therefore, the reissuing of the Trust Certificates is an internal process, and only leads to a K-1 distribution at the end of the year to the new Exchangers or Beneficiaries who are responsible to pay the taxes on funds received.

## The Equipment or Service Trust

The IRS describes abusive Trust arrangements as those being promoted with the promise of tax benefits with no meaningful change in the taxpayer's control over or benefit from the taxpayer's income or assets. The promised benefits may include the following:

Reduction or elimination of income subject to tax

- Deductions
  - Personal expenses paid by the Trust
  - Depreciation of an owner's personal expenses paid by the Trust
  - Depreciation of an owner's personal residence and furnishings

161

Art of Passing the Buck, Volume II

- A stepped-up basis for property transferred to the Trust

- The reduction or elimination of self-employment taxes

- Reduction or elimination of estate or gift taxes

The list is impressive, and one would think that with this definition, even the time-honored Irrevocable Statutory Trust falls into the abusive Trust arrangement category.

There is a key phrase to note in Notice 97-24, "meaningful change." This means 'Did the Grantor actually surrender assets to a bonafide Irrevocable Trust Board of Trustees, or is he or she still in control of the assets? This particular notification blurs those lines, so those who read these warnings do not quite have a clear picture.

The determinant here is always–does the Trust have a fully functioning Board of Trustees or a real Trustee, separate from the Grantor? If yes, then a Trust exists, if not, then a scam Trust exists.

Before we apply our insight and interpretation to the example of an Equipment or Service Trust, we will address the issues listed above.

1.    Reduction or Elimination of income subject to tax

   a.    If a person gives his stock portfolio to a Trust with a fully operating and conscious Board of Trustees, and the Grantor has surrendered control, then the Trust receives the funds and thus owes the tax. This, automatically reduces the Grantor's income tax. We think this is obvious.

   b.    If all the funds that flowed to the Grantor, prior to the Trust, now flow to the fully functional Irrevocable Trust, and the Grantor has properly surrendered control of this cash flow, then the Grantor does not owe the tax, the Trust owes the tax. This is not only basic reasoning, it happens to be the tax law.

2.    Deductions

   a.    Food and clothing are not deductible.

   b.    Most of the rent is not deductible.

   c.    Personal gifts given to others are not deductible.

The Common-Law Trust is one of the oldest ways to hold a family together, and to gather the support needed to meet the challenges before it. This is why the emphasis is on training, for not only the Trustees, but the entire family. We tell you this from experience.

## Oaths, Allegiance, Commitment

American society has practically lost initiation through ritual. Key moments in time where achievement would be impressed, where honor and pride ooze through our body of having gone through the task go unnoticed. For winning a race, we get a reward and maybe a song. We are left with wedding ceremonies and graduations, along with a few rituals in religion. We miss a key component in our society.

We no longer swear oaths as the Quakers did, shown in Appendix A of Volume I. The bonding of those who go through trials together are not properly celebrated. Rushing from one task to another, a reward here and there, we carry on.

In a Common-Law Trust there is no particular ritual, yet there is an oath about privacy. With enough education and the right wording, it becomes a special commitment. Not only will you be fined anywhere from $10,000 to $100,000 for its violation, but you can be tossed out of the group. Now, when opposition comes to entice you to give up the names of the Beneficiaries, surrender documents you can simply say, "I have signed an Oath of Privacy. I cannot."

Should they continue to tempt, you can ask them if they want to pay the fine.

Although you may feel initially frightened to sign the document, you will find it to be your best friend. With a long list of what you cannot reveal, you are covered.

## Trained Agents

Trained federal agents and other government employees will not stop to consider the damage done to a family by their actions. The Trust may become a target as the more money there is in it, the more attractive it becomes. Specializing in fear tactics, agents may confront anyone surrounding the Trust.

Here is one of the main reasons to keep Beneficiaries private. Usually they do not have details about Trust finances. When faced with an agent, they assume the worst. Suddenly, they believe the Trustees have done something illegal. They know everyone will go to jail. Because of this, it is better they know nothing, not even that agents have inquired.

## Art of Passing the Buck, Volume II

On the Internet is a series of articles titled "If an Agent Knocks." Several pages are available for your education about how the FBI performs as well as your proper response. Contrary to the belief that only the FBI performs fact-gathering, the IRS does its share. Allegedly interested in taxes, the IRS inquires into matters threatening the Federal Reserve Bank. This includes books, web sites, magazine articles and other related areas of interest.

U.S. Government officials, including IRS Agents, use intimidation tactics to extract information from unsuspecting people. The Trustees cannot afford to be so naive, and to fall for their methods.

The rule is only the Trustees deal with agency officials. Refer to the Trustees telephone calls from agents, or documents received.

Trained Trustees know the IRS is a foreign organization, based in Puerto Rico, and not part of the U.S. Government.[113] The IRS is, further, a foreign corporation working for the international bankers who own the *corporate* United States of America since June 1933 when President Roosevelt declared the U.S. bankrupt through Executive Orders 6073, 6102, 6111 and 6260.[114] The IRS has no *legal* authority to collect money. A Common-Law Trust is not part of the *corporate* United States of America. Having this information does not stop the battle. It gets the battle drawn out, into a stalemate. This may last three to four years before the IRS finds a way to drop it without any admissions of its status.

Federal agents have no jurisdiction over Common-Law Trusts, other than guns in your face, and your ignorance. People have in the long run won by having the matter dropped or have won in court when they knew how to present effective arguments.[115] Sometimes, properly handling authorities when they first become aware of your Trust or organization, stops any serious confrontations later. Because IRS agents are

---

113     William Cooper, "BATF/IRS Criminal Fraud," CAJI News Service, *Veritas*, Issue No. 6, September 1995.

114     John B. Nelson, Senate Report No. 93-549, etc. December 26, 1991.

115     Loresha Wilson, "Local attorney acquitted on federal income tax charges. Cryer stopped filing income taxes more than 10 years ago," *The Shreveport Times*, July 13, 2007; Tom Cryer's federal case number is CR.No. 06-50164-1. Tom Cryer's web site is: http://www.gestation.net/liefreezone/

untrained, and so are many of the supervisors, lengthy paperwork and trips to court may occur. The IRS has a standard protocol: use the courts to wear out resistance.

Tom Cryer has made available the paperwork filed with the court on his case from 2002 through March 2004. The documents listed are fairly standard procedure, and the IRS can carry on this tactic for years. Further, in Volume I we documented the efforts to take down Mr. Betts. Because of the relentless pressure thus demonstrated, people have developed standard responses to IRS accusations. Its machine-like behavior becomes predictable. Effective, though, in destroying the lives of many people, an IRS loss here or there does not stop it.

Should your Trust tangle with the IRS, prepare for a long siege, and keep the Beneficiaries safe.

Without a search warrant, a private Trust does not have to volunteer records to the IRS. There are only some schedules the IRS can question if filed with the 1041.

## Dealing with Federal Agent Interviews

18 U.S.C. Section 1001 addresses what happens when you lie to a federal agent. Because of this, many attorneys recommend that their clients call them should any agent question them. We feel differently.

As mentioned before, people not trained in interrogation techniques, which is most of us, are no match for those who have every aim of using words to entrap you and possibly use them against you.

### Clever and Crafty

Humans are by nature trustworthy, friendly and helpful. You must learn to be crafty, clever, mean and deceitful. It takes about two minutes with a trained agent to discover you are no match for him or her. The dialogues on the various crime programs are accurate. Beyond that, these agents can lie and get away with it. For you to go after them for their conduct takes oodles of money, time and lawyers—if they are willing to join you in the battle.

### When to Talk

If you find yourself face-to-face with a representative of any government agency, you can speak ith them without a lawyer if you feel confident what you have to say will have little to no impact.