ANDRÉ BIROTTE
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
VALERIE MAKAREWICZ
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2729
Facsimile:  (213) 894-0115
E-mail:Valerie.Makarewicz@usdoj.gov

BRIAN H. CORCORAN
(D.C. Bar No. 456976)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Facsimile: (202) 514-6770
E-mail: brian.h.corcoran@usdoj.gov

Attorneys for Plaintiff, United States

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Civil No. |
| GWENN WYCOFF, and ) FRANK OZAK, ) | **Declaration of Thomas Cheung** |
| Defendants. ) | |

1.    I, Thomas Cheung, am over 18 years of age and competent to testify to the facts set forth in this declaration.

2.    My name, as used and signed in the subject summons and this declaration, is an authorized, registered pseudonym under federal law and the regulations of the Internal Revenue Service.

4595323.1

3.      I am employed as a revenue agent in the Los Angeles Territory, Group 1453, Area 7, Territory 1, Examination, Small Business/Self-Employed Division, of the Internal Revenue Service ("IRS").   I have been a revenue agent for 19 years.

4.      As part of my duties as revenue agent, between 2008 and 2009 I was assigned to conduct examination of the income tax returns relating to two separate trust entities: the Anna Correy Family Trust and the Sterling Paladin Family Trust. Although facially separate, my examination of these taxpayers' returns revealed a connection to Gwenn Wycoff and Frank Ozak, both of whom I understand to be the subject of the above-captioned lawsuit.  The statements I make in this declaration are based upon my investigation, my review of tax returns and other materials relating to the examinations I conducted, and my experience as a revenue agent.

### Wilson and the Anna Correy Family Trust

5.      Dr. Dean "Rex" Wilson is a naturopathic physician.   He does business under the trade name "Natural Way Systems." In 2003, Dr. Wilson was persuaded to create a trust after he saw an advertisement published by Wycoff and Ozak in a medical journal stating that it was possible for trust grantors to "own nothing, control everything."  He accordingly created the Anna Correy Family trust, and transferred all of his personal business activity to that trust.  Prior to the creation of the trust, Dr. Wilson reported the income he derived from his business practices on a Schedule C.

6.      Wycoff and Ozak subsequently prepared the trust documents, created trust bank accounts, and did other work to set up several trusts on behalf of Dr. Wilson. Wilson agreed that Ozak and Wycoff would serve as trustees.  One trust was to receive Dr. Wilson's business income, and issue checks for his individual salary and for his business rent and expenses.  A second trust was established

- 2 -

4595323.1

established for the purpose of owning all of Wilson's personal assets, a step which Wycoff and Ozak said would insulate Dr. Wilson from creditors. I also learned from my investigation that Wycoff and Ozak informed Dr. Wilson that he would realize tax advantages from the creation of such a trust.

7. Once the trusts had been created, all income and expenses reported in connection with Dr. Wilson's business were reported on fiduciary income tax returns (Forms 1041) filed by the "Anna Correy Family Trust." (*See* 2004 Anna Correy Family Trust tax return, a true copy of which is attached as Exhibit 1). Dr. Wilson was that trust's general manager, and he continued to operate his own business. After 2003, however, Dr. Wilson ceased filing a personal Form 1040 income tax return, and thus did not report his own salary or income derived from his business activities.

8. Through my examination of the Anna Correy Family Trust, I discovered that Dr. Wilson was the owner of Natural Ways Systems. I then proceeded to issue an administrative summons to Dr. Wilson. Through my subsequent interview of him, I learned much about the workings of these trusts.

9. Wycoff and Ozak had exclusive access to the trusts' bank accounts and used deposited money to pay trusts expenses as well as their fees. Those expenses included the payment of bills relating to Dr. Wilson's business. At the same time, Dr. Wilson submitted payments he received from clients to the trust. The Trust paid Dr. Wilson and monthly salary, and if he needed any additional money, he merely took out a "loan" from the trust.

10. Besides paying the costs and expenses of Dr. Wilson's business, Wycoff and Ozak used money deposited with the trust to make at least two investments that they later informed Dr. Wilson had been so unsuccessful that the sum of the investments was completely lost. Dr. Wilson has been unable to recover these lost investment sums from the Defendants.

4595323.1

11. Wycoff and Ozak also informed Dr. Wilson that the trusts could take deductions that an individual could not take on their tax returns. They informed him that they would arrange for the preparation of the trust's tax returns. Even though there was no return preparer information disclosed on the trust's tax return, the IRS has determined that Mr. James DiLullo was the actual preparer.

12. DiLullo is the owner of "Noble Trust Services, Co.," which was designated as a fiduciary of the trusts created by Wycoff and Ozak, and has been the subject of other enforcement action by the IRS and the Department of Justice. The Department of Justice obtained a permanent injunction against DiLullo in November 2007 in connection with his promotion of sham trusts much like those that appear to have been promoted and created by Ozak and Wycoff.

13. Even though the trusts were ostensibly created for Dr. Wilson's benefit, in fact the Defendants designed the trusts to benefit them personally as well. One of the trust documents states that Dr. Wilson was to be fined $100,000 for discussing trust information with others. In addition, another document provides that if the trust were dissolved, Ozak and Wycoff would get 51% of the assets or funds in the trust, rather than the customer/grantor or beneficiary (who were the source of the trust's assets to begin with).

14. The IRS specifically examined the tax returns for the Wilson trusts for the 2005-2007 tax years, In so doing, it discovered that they all contained false deductions offsetting all of the reported trust income and reported zero overall tax liability. Dr. Wilson had never seen, nor had he signed, the tax returns Wycoff and Ozak arranged to have prepared. Indeed, he only learned that the IRS had opened an audit to investigate the trust's tax liability when he received a summons.

15. The returns that had been filed for the "Anna Correy Family Trust" reported all the income and expenses of Dr. Wilson's business (Natural Ways Systems)

- 4 -

4595323.1

activity. The trust then reported distributing all the income received from the business to Equity Management Trust ("EMT"), the purported beneficiary of the trust. I later discovered that EMT was also identified as the beneficiary of the Sterling Paladin Family Trust, as well as other trusts created by Ozak and Wycoff.

16. After we had reviewed the Anna Correy Family Trust income tax returns, however, the IRS determined that the trusts should be disregarded for tax purposes - either because the trusts were sham arrangements with no economic substance, or because they were grantor trusts whose income was taxable to him individually. As a result, Dr. Wilson's income was adjusted to be that of the gross income of the business purportedly operated by the trust, and the IRS recalculated Dr. Wilson's actual tax liability.

17. The examination of Dr. Wilson's income taxes and the trusts opened on his behalf was completed in the summer of 2009. After the IRS had calculated necessary changes, it was determined that Dr. Wilson owed $48,834 in unpaid taxes to the Government, plus penalties and interest. Dr. Wilson agreed to the changes to his tax returns. (*See* Form 4549 "Income Tax Examination Changes," dated June 25, 2009, a true copy of which is attached as Exhibit 2).

*The Sterling Paladin Family Trust*

18. In addition to examining the trusts created and operated by Wycoff and Ozak for Dr. Wilson, I also had occasion to examine the 2005 and 2006 tax returns filed by the "Sterling Paladin Family Trust" in 2008. Those returns are characterized by many of the same suspicious claims and features reflected in the trusts set up by Wycoff and Ozak for Dr. Wilson. (*See* 2005 Sterling Paladin Family Trust income tax return, a true copy of which is attached as

- 5 -

4595323.1

Exhibit 3, and 2006 Sterling Paladin Family Trust income tax return, a true copy of which is attached as Exhibit 4).

19. The Sterling Paladin Family Trust was created on March 2, 2002. It purports to be a family asset management entity established by Heidemarie Kauahikaua. Ozak was designated as a trustee of this trust.

20. The trust's beneficiary, and the entity to which it purportedly distributed all of its income was EMT. This entity was familiar to the IRS, because it was owned previously by James DiLullo (a promoter of similar tax scams, as noted above). As noted above, EMT also has been designated as the beneficiary of other trusts created by Wycoff and Ozak.

21. Through my examination of the Sterling Paladin Family Trust, I also learned (after summoning bank account records) that the trust made no cash distributions to EMT in the 2005 or 2006 tax years - contrary to the representations made in the trust's tax returns. EMT's own fiduciary income tax return only reported scheduled K-1 income in 2006, and none in 2005. EMT itself reported distributing all income received from the Sterling Paladin Family Trust to other layered trusts domiciled in foreign countries (which did not file federal income tax returns). From this arrangement, it was apparent to me that EMT was simply part of a tiered trust arrangement designed solely to circumvent the tax structure and evade tax liability.

22. Another suspicious characteristic of this trust was the P.O. Box it gave as its address - an address in the Bahamas and the same used by Ozak and Wycoff for the "Anna Correy Family Trust" as well as other trusts created by Ozak and Wycoff. But when I attempted to contact the trust via this address, my contact letters were returned undelivered. After a more thorough search via the IRS tax attaché for the Bahamas, I determined that there was no record of the "Sterling Paladin Family Trust" having ever rented the relevant post office box.

4595323.1

23. I also observed certain transactions reported by the trust's tax returns that could not be verified independently. For example, in 2005 and 2006, the trust purportedly sold property and reported in its tax returns a gain of $5,270 and $203,000, respectively. To date, however, the IRS has determined that the property sold in both years belonged not to the Trust or its grantor, but instead to third parties. For example, the property sold in 2005 belonged to John and Donna Wells. The Wells also received monthly payments from Sterling, but did not report any capital gains on their 2005 individual income tax return.

24. Similarly, the property sold in 2006 belonged to Richard Montoya. The trust paid the utility bills associated with the property for Mr. Montoya, who (like the Wellses) did not report any capital gains on his 2006 individual income tax return for the property's sale.

25. The 2005 and 2006 Form 1041 income tax returns prepared for the Sterling Paladin Family Trust reported income of $162,242 in 2005 and $246,555 in 2006. (*See* Exhibits 3 and 4). They also claimed a deduction for income distribution, reducing the trust's income to zero for both tax years. After my examination, however, I determined that the Sterling Paladin Family Trust was merely an abusive arrangement intended to evade tax liability, much like the Anna Correy Family Trust.

26. Accordingly, in the summer of 2009 I recommended that a jeopardy assessment of $238,285, plus interest and penalties, be made against this trust, and my recommendation was granted. (*See* June 23, 2009 notice, a true copy of which is attached as Exhibit 5).

4595323.1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 02, 2010

Thomas Cheung

Thomas Cheung

4595323.1