Gwenn Wycoff and Frank Ozak
2801 Ocean Park Blvd., No. 296
Santa Monica, CA 90064
Tel: (310) 398-6370
E-Mail: FCOZ2003@yahoo.com
In Propria Persona

2010 OCT 18  PM 3: 48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| United States of America, | Case No. CV 10-5856-JHN(PLAx) |
|---|---|
| Plaintiff, | **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND OTHER RELIEF; EXHIBITS A- C** |
| v. | |
| Gwenn Wycoff and Frank Ozak, | |
| Defendants. | |

Table of Contents on following page

Due to lack of time (only 6 days notice) we could not complete the Table Of Authorities completely; however, we've made our best attempt.

1

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

A.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

B.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

C.   STATEMENT OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

PRESENT MOTION IS PREMATURE  . . . . . . . . . . . . . . . . . . . . . . . .  12

EQUITABLE DOCTRINES OF *RES JUDICATATA* AND *LACHES*
OPERATE TO BAR COUNSEL FOR  . . . . . . . . . . . . . . . . . . . . . .  12

EXHIBITS IN THE PRESENT MOTION IS BARRED UNDER THE
EQUITABLE DOCTRINES OF *RES  JUDICATA* AND *LACHES*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

ATTEMPTS TO BAR PUBLICATION THROUGH PRELIMINARY
INJUNCTION CONSTITUTE AN UNLAWFUL PRIOR RESTRAINT
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

COUNSEL FOR PLAINTIFF HAVE  FAILED TO DEMONSTRATE
SUCH PUBLICATIONS CONSTITUTE ADVERTISING, OR SUCH
PUBLICATIONS CONTAIN STATEMENTS WHICH
CONSTITUTE TAX FRAUD  . . . . . . . . . . . . . . . . . . . . . . . . . .  21

# Table of Authorities

*SEC v. Mono-Kearsarge Consol. Mining Co.* (D. Utah 1958) 167 F.Supp. 248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Goldberg v. Kelly,* (1970) 397 U.S. 254 at 257 . . . . . . . . . . . . . . 8,12,13

*U.S. v. International Bldg Co.* (1953) 345 U.S. 502 . . . . . . . . . . . . . . . 13

*United States v. Estate Preservation Services,* (9th Circ. 2000) 202 F.3d 1093 at 1098 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Clark-Cowlitz Joint Operating Agency,* (D.C. Cir. 1987) . . . . . . . . . . . . . . . 13,14

*Ashcroft v. American Civil Liberties Union* (2002) 535 U.S. 564 . . . . . . . . . . . 18

*Berger v. City of Seattle* 569 F.3d. 1029 (9th Circ., 2009) . . . . . . . . . . . . . . . . 20

*Bland v. Fessler,* (9th Circ. 1996) 88 F.3d 729 . . . . . . . . . . . . . . . . . . . 21,23

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York* (1980) 447 U.S. 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Central Point Software, Inc. v. Global Software* & Accessories, (E.D.N.Y. 1994) 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*City of Lakewood v. Plain Dealer Pub. Co.* (1988) 486 U.S. 750 . . . . . . . . . . . 19

*Cohen v. California* (1971) 403 U.S. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Communication Telesystems Intern. v. California Public Utility Com'n.* (9th Circ. 1999) 196 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Douglass v. City of Jeannette (Pennsylvania)* (1943) 319 U.S. 157 . . . . . . . . . . 18

*Flint Distributing Company v. Harvey,* (9th Circ. 1984) 734 F.2d 1389 . . . . . . . 17

*Florida Bar. v. Went For It, Inc.* (1995) 515 U.S. 618 . . . . . . . . . . . . . . . . . . . 22

*Freedom Communications, Inc. v. Superior Court* (4th Dist. 2008) 167 Cal.App.4th 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Goldberg v. Kelly,* (1970) 397 U.S. 254 at 257 . . . . . . . . . . . . . . . . . . . . . . 12

*Greater New Orleans Broadcasting Ass'n, Inc. v. U.S.* (1999) 527 U.S. 173 . . . 23

*In re Marriage of Meredith, supra,* (2009) 201 P.3d. 1056 . . . . . . . . . . . . . . . 21

*Jaynes v. Com.* (2008) 276 Va. 443, 666 S.E.2d 303 . . . . . . . . . . . . . . . . . . . 20

*Kingsley Intern. Pictures Corp. v. Regents of University of State of N.Y.* (1959) 360 U.S. 684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lake Monroe Regional Waste Dist v. Waicukauski,* (Ind. Ct., App. 4th Dist., 1986) 501 N.E.2d 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Linmark Associates, Inc. v. Willingboro Tp.* (1977) 431 U.S. 85 . . . . . . . . . . . . 23

*Liquormart, Inc. v. Rhode Island* (1996) 517 U.S. 484 . . . . . . . . . . . . . . . . 22

*McIntyre v. Ohio Elections Com'n,* (1995) 514 U.S. 334. . . . . . . . . . . . . . . . 19

*McKinney v. Alabama* (1976) 424 U.S. 669 . . . . . . . . . . . . . . . . . . . . 20

*Menard, Inc. v. Liteway Lighting Products,* (2005) 2005 WI 98, 828 Wis.2d 582, 698 N.W.2d 738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*New Hampshire v. Maine* (2001) 532 U.S. 742 . . . . . . . . . . . . . . . . . . . 14

*New Times, Inc. v. Isaacks* (Tex. 2004) 146 S.W.3d 144. . . . . . . . . . . . . . . 18

*Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.* (Tex 1998) 975 S.W.2d 546 . . . . . . . . . . . . . . . . . . . . . 19

*Original Great Am. Chocolate Chip Co. V. River Valley Cookies* (7th Circ. 1992) 970 F.2d 273, 281-282 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Procter & Gamble Co. v. Bankers Trust Co.* (6th Cir. 1996) 78 F.3d 219 . . . . . . 21

*R.A.V. v. City of St. Paul, Minn.* (1992) 505 U.S. 377 . . . . . . . . . . . . . . . 19

*Red Lion Broadcasting Co. v. F.C.C.* (1969) 395 U.S. 367 . . . . . . . . . . . . . . 17

*Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470 . . . . . . . . . . . . . . 15

*Rodriguez v. State* (Fla 2004) 906 So.2d 1082 . . . . . . . . . . . . . . . . . . 18

*Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 198 (9th Cir.1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Daily Mail Pub. Co.* (1979) 443 U.S. 97 . . . . . . . . . . . . . . . . . . 20

*Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546 . . . . . . . . . . . . 22

*Texas v. Johnson*, (1989) 491 U.S. 397 . . . . . . . . . . . . . . . . . . . . . . . 18

*Thompson v. Western States Medical Center* (2002) 535 U.S. 357 . . . . . . . . . . 23

*Trustees of State University of New York v. Fox* (1989) 492 U.S. 469) . . . . . . . . 23

*U.S. v. Edge Broadcasting Co.* (1993) 509 U.S. 418 . . . . . . . . . . . . . . . . . 22

*U.S. v. McCalip*, Central District of California Case No. CV 08-04786 CAS AJWx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,15,16

*U.S. v. Philip Morris USA Inc,* (D.C. Circ. 2009) 566 F.3d 1097 . . . . . . . . . . . 22

*United States v. Estate Preservation Services* . . . . . . . . . . . . . . . . . . . 25

*United States v. Imperial Irrigation Dist.* (9th Circ. 1992) . . . . . . . . . . . . . 16

*Vance v. Universal Amusement Co. Inc., supra* (1980) 445 U.S. 308 . . . . . . . . . 21

*Watts v. U.S.* (1969) 394 U.S. 705  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Weaver v. Jordan* (1966) 64 Cal.2d 235.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL RULES**

*Federal Rule of Civil Procedure*, Rule 65(b)(3)  . . . . . . . . . . . . . . . . . . . 12

**OTHER AUTHORITIES**

*11 C. Wright and A. Miller, Federal Practice and Procedure, Civil*, Sec. 2949 at 471  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,26

*Federal Practice and Procedure, Civil*, Sec. 2949 at 471 (1973)  . . . . . . . . . . . 16

*Moore's Federal Practice*, § 65.06[5][a]  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## A.    INTRODUCTION

Counsel for Plaintiff have brought the present Motion for Preliminary Injunction before Defendants and Responding Parties (hereinafter "Responding Parties") had the opportunity to have a hearing on their Motion for Further Statement, or even to file an Answer to the Complaint.

Responding Parties were under the impression that a cornerstone of American justice is due process, and under the case of *Goldberg v. Kelly,* (1970) 397 U.S. 254 at 257, where an individual is facing a deprivation of life, liberty, or property, procedural due process mandates he or she is entitled to adequate notice, a hearing with opportunity to be heard, and a neutral judge.  Apparently, Counsel for Plaintiff do not see it that way.

Counsel for Plaintiff have instead filed a Motion for Preliminary Injunction which, under its terms, permits Responding Parties only ten days to respond; and is the only response permitted by the FRCP and this honorable Court's Local Rules. Because Counsel for Plaintiff  mailed their Motion from Washington, D.C. to Responding Parties in Los Angeles, it was actually received on October 12, six days before an Opposition was due. Responding Parties will contend such short notice constitutes NO notice, particularly to parties who must represent themselves pro se, and therefore, the ramifications of F.R.C.P. 65 make the present Motion premature.

In the course of their Motion, Counsel for Plaintiff appear to be following the maxim of the prolific singer/songwriter Phil Collins, that "if you throw enough [manure] on the wall, some of it will stick." (We hope Counsel for Plaintiff and this honorable Court will forgive Responding Parties' emendation of this quote, but the

8

original was perhaps too pungent for polite company, which includes this honorable Court.)

In Exhibits A-G of their present Motion, Counsel for Plaintiff have shoveled truly Augean[1] quantities of 'evidence' in the direction of this honorable Court. They have done so before Responding Parties could even properly answer the Complaint. This appears as an effort to prejudice this Honorable Court in their favor, and they have done so with the knowledge or at least the assurance Responding Parties do not possess the files necessary to rebut this evidence or overcome this prejudice.

Responding Parties also seek to demonstrate, via the Statement of Law below, that: i) the present Motion is premature under F.R.C.P. Rule 65; ii) the evidence presented in Counsel for Plaintiffs' Exhibits is barred under the equitable doctrines of res adjudicata and *laches*; iii) the equitable doctrines of res ajudicata and *laches* operate here to bar Counsel for Plaintiff's request for such equitable relief as a preliminary injunction; iv) the publications sold or presented by Responding Parties are protected educational and political speech under the First Amendment, and attempts to bar publication through preliminary injunction constitute an unlawful prior restraint; and v) assuming, *arguendo,* components of the publications mentioned above do constitute commercial speech, Counsel for Plaintiff have failed to

---

[1] The adjective "Augean" requires some explanation these days. In Greek mythology, one of the labors of the hero Hercules was to clean the stables of the tyrant Augeas in a single day. Those stables contained a thousand cattle, which had been leaving 'evidence' for 30 years. Hercules accomplished this task by diverting a river through the stables. The story ends with Hercules throttling Augeus. While Responding Parties deplore violence, and make no threats (contrary to Counsel for Plaintiff), they hope they may be forgiven for agreeing with Hercules' sentiment.

9

demonstrate such publications constitute advertising, or such publications contain "numerous" or even any statements which constitute tax fraud.

For these reasons, Responding Parties respectfully request this Honorable Court deny the present Motion in its entirety.

## B.    STATEMENT OF FACTS

In their Exhibits to the present Motion, Counsel for Plaintiffs have attempted to paint Responding Parties as evildoers who defrauded Rex Wilson (via the Anna Correy Family Trust) and the Serban family, cost them thousands of dollars in tax assessments and penalties, and therefore engaged in acts contrary to 26 USC 6700 and 6701.

These cases are completely off point and a distraction to the real issue about content of *The Art of Passing the Buck*. If there are incorrect statements in the book, and they relate to these cases, please refer to page numbers and be specific about how it applies to the current matter before this Court.

For reasons Responding Parties will make clear later in this Opposition, however, Counsel for Plaintiff had both the opportunity and the duty to discuss the above facts and settle the above issues in the prior case of *U.S. v. McCalip*, Central District of California Case No. CV 08-04786 CAS AJWx, and Counsel for Plaintiff's failure to do so constitutes an estoppel by *res judicata* after the close of the above case.

For reasons which Responding Parties will also make clear, the delay of eight years between the IRS and the DOJ's initial investigation of Responding Parties for alleged Trust abuse, and the filing of the underlying Complaint in this case, constitutes an *estoppel by laches*, which also prevents the use of Counsel for Plaintiff's Exhibits in the present case. At the very least, that delay puts the lie to

10

Counsel for Plaintiff's assertions that immediate injunctive relief is necessary in this case. If the IRS and the DOJ together were willing to wait eight years between their initial investigation and the present Complaint, why should they not then wait until Responding Parties can at least file their Answer, and at least have the opportunity to be heard in the present case?

Responding Parties assert the following facts and time line are essential to an understanding of the basis for Responding Parties' Opposition:

1.    2002: The year IRS Agent Lee began her investigation of Responding Parties for alleged violations of 26 USC 6700. (Motion for Preliminary Injunction; Opposition, Exhibit B.

2.    12/10/04: the date by which Responding Parties ceased assisting third parties in the formation of trusts (Opposition, Exhibits C and D, Declarations of Gwenn Wycoff and Frank Ozak).

3.    07/22/08, the date Counsel for Plaintiff Sandra R. Brown and Darwin Thomas filed (On behalf of the IRS and via the DOJ) the case of *U.S. v. McCalip*, Trustee of the Kensington Fund Irrevocable Trust, Case No. CV 08-04786 CAS AJWx (Opposition Exhibit A, Title page of the Petition).

4.    08/18/08, the date Respondent George McCalip filed his Response to Petition to Enforce Internal Revenue Summons in the above case (Opposition, Exhibit B). As shall be later shown, this Response named both Gwenn Wycoff and Frank Ozak, and raised the issue of them as alleged promoters of abusive trusts, thus putting these individuals and matters at issue.

5.    09/30/08, the date the court record in Case No. CV 08-04786 CAS AJWx indicates said case was closed.

6.    08/14/08, the date the underlying Complaint in this case was filed.

11

A fair reading of the above timeline would show <u>eight years</u> had passed between the IRS and the DOJ's investigation of Responding Parties and the present Complaint. It would also indicate Counsel for Plaintiff Sandra R. Brown and Darwin Thomas were put on notice of the existence of investigation for at least <u>two years</u> before Counsel for Plaintiff brought the present Complaint (assuming, *arguendo*, they were not apprized of it before then). Both these facts at the least indicate the dilatory response of the DOJ in general and Counsel for Plaintiff in particular, and would negate any allegations of the need for urgency in bringing the present Motion for Preliminary Injunction.

Further, the Declarations of Gwenn Wycoff and Frank Ozak (Opposition, Ex. C and D) themselves indicate both Responding Parties had ceased the process of trust formation for new customers as of December 10, 2004. This may be confirmed by the inability of the IRS or the DOJ to present evidence of later alleged "wrongdoing" against Responding Parties. Responding Parties would contend that this would also negate allegations of urgency

## C.    STATEMENT OF LAW

### i)    THE PRESENT MOTION IS PREMATURE UNDER FRCP 65b3 AND THE REQUIREMENTS FOR DUE PROCESS

Federal Rule of Civil Procedure, Rule 65(b)(3) states in relevant part:

> If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character . . .

Responding Parties would argue six days actual notice before an Opposition is due would constitute inadequate notice, particularly for non-lawyers such as Responding Parties, who are required because of indigence to defend themselves *in pro per.* Responding Parties would therefore argue inadequate notice equals no

notice. In consequence, Responding Parties argue the above Rule applies, and the present motion should not take precedence over the present Motion for Further Statement, which is presently being heard.

Responding Parties would also argue Counsel for Plaintiff's filing of a Preliminary Injunction before Responding Parties can file an answer is a denial of their rights of due process, in they were not given an opportunity first to respond, as per *Goldberg v. Kelly,* (1970) 397 U.S. 254 at 257. Responding Parties have reviewed the cases that construe 26 USC 6700 and 26 USC 7408, and have been unable to find any cases in which a preliminary injunction under those statutes has been granted before an answer has been filed or a default has been taken. Responding Parties would respectfully request that this honorable Court examine those precedents before taking a hasty and perhaps premature action.

ii) **THE EQUITABLE DOCTRINES OF *RES JUDICATATA* AND *LACHES* OPERATE TO BAR COUNSEL FOR PLAINTIFF'S REQUEST FOR SUCH EQUITABLE RELIEF AS A PRELIMINARY INJUNCTION.**

Counsel for Plaintiff have taken great pains to show that injunctive relief in general, and a preliminary injunction in particular under 26 USC 7408, are equitable remedies. As such, it is well settled that principles of equity must be applied in any assessing the need for injunctive relief. *SEC v. Mono-Kearsarge Consol. Mining Co.* (D. Utah 1958) 167 F.Supp. 248; *Moore's Federal Practice,* § 65.06[5][a]. Therefore, defenses traditionally applied in equity are relevant in a court's assessment of a request for injunctive relief. *Original Great Am. Chocolate Chip Co. V. River Valley Cookies* (7th Circ. 1992) 970 F.2d 273, 281-282.

It is well settled that principles of equity must be applied in any assessment for injunctive relief; this would include the equitable remedies of estoppel and laches. *Moore's Federal Practice,* § 65.06[5][b], *SEC v. Mono-Kearsarge*

*Consol. Mining Co., supra* (D. Utah 1958) 167 F.Supp. 248. And in the case of *Sage v. U.S.* (5ᵗʰ Circ. 1990) 908 F.2d 18, 25, it was specifically recognized that the doctrine of *laches* remained as a curb under 26 USC 6700.

More particularly, however, estoppel by *res judicata* is an equitable defense, most usually made as an affirmative defense. *Lake Monroe Regional Waste Dist v. Waicukauski,* (Ind. Ct., App. 4ᵗʰ Dist., 1986) 501 N.E.2d 466. As Counsel for Plaintiff have made the present Motion before Responding Parties could make their Answer to the underlying Complaint, Responding Parties will have to do so now.

Under the doctrine of *res judicata*, a final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive as to the rights of the parties and their privies. *U.S. v. International Bldg Co.* (1953) 345 U.S. 502. *Res judicata* or claim preclusion thus prevents a litigant from reasserting or relitigating a claim that has already been decided on the merits. *New Hampshire v. Maine* (2001) 532 U.S. 742. More particularly, *res judicata* bars a party from relitigating a matter that the party has already had the chance or opportunity to litigate. *Clark-Cowlitz Joint Operating Agency*, (D.C. Cir. 1987).

In particular, in order for earlier proceedings to act as *res judicata* or a claim preclusive bar in relation to a subsequent suit, (1) the parties or their privies in prior and subsequent suits must be identical; (2) the causes of action in two suits must be identical or be based on the same set of operative facts; and (3) there must have been a final judgment on the merits in a court of competent jurisdiction. *Menard, Inc. v. Liteway Lighting Products,* (2005) 2005 WI 98, 828 Wis.2d 582, 698 N.W.2d 738.

In exhibits A and B of Responding Parties' Opposition, they have demonstrated that the parties of the present suit and the suit of *U.S. v. McCalip, supra* are identical. (Plaintiff: the United States of America, by and through the Department of Justice, and on behalf of the Internal Revenue Service; Defendant:

14

George McCalip, real parties in interest, Kensington Fund, Gwenn Wycoff, and Frank Ozak).

While the causes of action are admittedly not identical, Susan Lee's activities sufficiently indicates that *U.S. v. McCalip* is based on the same set of operative facts: the claim that the present responding parties had engaged in fraudulent trust practices beginning in 2002, and allegedly continuing until 2008, the date in which the underlying summons was issued.

And Responding Parties respectfully request Counsel for Plaintiff and this honorable Court take judicial notice of the fact that a final judgment on the merits of the underlying matter of *U.S. v. McCalip* was in fact filed on September 28, 2008, in United States District Court, Central District, Western Division, the same court (though before a different judge) as this honorable Court. Responding Parties respectfully submit that both the past and present Courts are courts of competent jurisdiction for the past and present actions.

Most tangent for the present case, however, is that *res judicata* or claim preclusion bars a party from relitigating a matter that the party has already had the chance or opportunity to litigate. *Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470. Thus, *res judicata* bars the litigation, not only of issues that were actually litigated (see *supra),* but also issues that could have litigated (*Rivet, supra)* or should have been litigated in the previous proceeding. *Communication Telesystems Intern. v. California Public Utility Com'n.* (9th Circ. 1999) 196 F.3d 1011.

Responding Parties contend that the issues of Responding Parties as promoters of abusive trusts, (raised in page 1 of Exhibit B), and of an ongoing investigation as to Responding Parties from 2002 to the date of the filing of Exhibit B (indicated in Exhibit 1 of the present Exhibit B), put both Counsel for Plaintiff (more particularly, counsel Sandra R. Brown and Darwin Thomas) on notice of the importance of issues that could and should have been litigated.

Had Counsel Sandra R. Brown and Darwin Thomas actually wished to preserve the above issues for litigation, they could either have pursued such litigation in the case of *U.S. v. McCalip,* or alternatively, they could have requested leave of the prior court to preserve such issues for later action. Finally, they could have preserved these issues by the simple expedient of requesting that the case of *U.S. v. McCalip* remain open, albeit inactive. Counsel Sandra R. Brown's and Darwin Thomas' failure to do <u>any</u> of these actions estops them from reopening the above issues now.

This is not to say that all of the issues of the present case are estopped: Counsel for Plaintiff still have the opportunity to raise the issues of whether recent publications of Responding Parties constitute commercial speech, and whether such speech may be regulated or censored by preliminary injunction.

But in addition to the equitable defense of estoppel by *res judicata,* Responding Parties also argue that the present motion is barred by *laches.* Acquiescence or *laches* by the movant with respect to the conduct sought to be enjoined may bar injunctive relief. *United States v. Imperial Irrigation Dist.* (9th Circ. 1992). A movant should commence action as soon as he or she has knowledge of defendant's alleged harmful conduct. Any unreasonable delay in commencing an action may bar injunctive relief. *Central Point Software, Inc. v. Global Software & Accessories,* (E.D.N.Y. 1994) *Moore's Federal Practice,* § 65.06[5][b]. More particularly, *Central Point Software, Inc, supra* at 645 indicates that "[p]laintiff's extensive delay in bringing this motion for a preliminary injunction undercuts any claim of urgency to the preliminary relief now sought."

The underlying Plaintiff in the present action, The United States of America, through its agencies, the Internal Revenue Service and the Department of Justice, admit that they had been 'investigating' Responding Parties' alleged wrongdoings for the last eight years. Even after Responding Parties had put Counsel for Plaintiff personally on notice as to that investigation and those alleged wrongdoings,

16

Counsel for Plaintiff waited two years after the close of a case that could have brought such action before they finally brought such action.

Plaintiff and Counsel for Plaintiff's failure promptly to bring the present action, especially in light of the prejudice such delay has caused Responding Parties in the loss of personal files, faded witness recollection, or even reasonable expectation that the matter had been closed and abandoned, is sufficient to constitute unreasonable delay, and warrants a denial of the present Motion. At the very least, in the words of *Central Point Software, supra,* such delay 'undercuts any claim of urgency to the preliminary relief now sought." For this reason alone, the present Motion should be denied.

### iii) THE EVIDENCE PRESENTED IN COUNSEL FOR PLAINTIFF'S EXHIBITS IN THE PRESENT MOTION IS BARRED UNDER THE EQUITABLE DOCTRINES OF *RES JUDICATA* AND *LACHES*

Counsel for Plaintiff make much in their present Motion that under the authority of *Flint Distributing Company v. Harvey,* (9th Circ. 1984) 734 F.2d 1389, among other cases, that they are permitted to bring otherwise inadmissible evidence in the course of their Motion for Preliminary Injunction.

Unfortunately for said Counsel, an actual reading of *Flint* does not permit so sanguine a view: "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial. *11 C. Wright and A. Miller, Federal Practice and Procedure, Civil,* Sec. 2949 at 471 (1973). See *Ross-Whitney Corp. v. Smith Kline & French Laboratories,* 207 F.2d 190, 198 (9th Cir.1953) (preliminary injunction may be granted on affidavits)."

Responding Parties would note that because of the lack of urgency demonstrated in the present case, an application of *Flint* would be inappropriate here. Further, to permit the use of evidence which properly is estopped by both *res judicata* and *laches,* would be in effect to deny the use of such equitable defenses in

17

the present Motion. For these reasons, Responding Parties would argue that the use of such evidence in the present case may be properly denied by this Honorable Court.

**v)    THE PUBLICATIONS SOLD OR PRESENTED BY RESPONDING PARTIES ARE PROTECTED EDUCATIONAL AND POLITICAL SPEECH UNDER THE FIRST AMENDMENT, AND ATTEMPTS TO BAR PUBLICATION THROUGH PRELIMINARY INJUNCTION CONSTITUTE AN UNLAWFUL PRIOR RESTRAINT**

Counsel for Plaintiff have spent considerable time attempting to prejudice the view of this honorable Court against Responding Parties, before the latter have had the opportunity even to respond via Answer to the underlying Complaint. And yet, they have spent little time or space (i.e., less than one page of their present Motion) as regards such grave matters as the protection and preservation of the First Amendment, save to assert baldly that it does not apply in this case.

In consequence, Responding Parties request the patience of this honorable Court in briefing such Court as to relevant authority regarding the First Amendment.

If there is a bedrock principle underlying the scope of the First Amendment, it is that government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable. *Texas v. Johnson*, (1989) 491 U.S. 397. Freedom of speech and of the press rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public. *Red Lion Broadcasting Co. v. F.C.C.* (1969) 395 U.S. 367.

The underlying safeguard of the constitutional provision for freedom of the press or of speech is "that opinion is free and conduct alone is amenable to the law." *Watts v. U.S.* (1969) 394 U.S. 705. The government may not regulate speech based on the substantive content of the message it conveys, nor may it, in the realm of private speech or expression, favor one speaker over another, inasmuch as any discrimination against speech because of its message is presumed to be unconstitutional. *Cohen v. California* (1971) 403 U.S. 15.

18

While Counsel for Plaintiff appear to decry the speech that Responding Parties promote because of its 'crazy' or 'offensive' ideas, the First Amendment generally prevents the government from proscribing speech or even expressive conduct because of its disapproval of the ideas being expressed. *R.A.V. v. City of St. Paul, Minn.* (1992) 505 U.S. 377. Indeed, as a general matter, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *Ashcroft v. American Civil Liberties Union* (2002) 535 U.S. 564.

Additionally, speech is protected even when the subject or manner of expression is uncomfortable. *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.* (Tex 1998) 975 S.W.2d 546. Moreover, the First Amendment denies a state the power to prohibit dissemination of social, economic, and political doctrine which a vast majority of its citizens believe to be false and fraught with evil consequence. *Rodriguez v. State* (Fla 2004) 906 So.2d 1082. Humor is a protected form of free speech, just as much to be given full scope, under appropriate circumstances, as political speech, journalistic expose, or religious tracts. *New Times, Inc. v. Isaacks* (Tex. 2004) 146 S.W.3d 144. Rhetorical hyperbole and expressions of opinion not asserting actual or provable facts are also protected speech. *Iowa Supreme Court Attorney Disciplinary Bd. v. Weaver* (Iowa, 2008) 750 N.W.2d. 71

So much for attempts by Counsel for Plaintiff to minimize the publications sold or promoted by Responding Parties because they may be odd, or unpopular, or jocular: they are still protected by the First Amendment.

The First Amendment assures the broadest colorable exercise of free speech and free press for religious, political, economic, scientific, news, or informational ends. *Douglass v. City of Jeannette (Pennsylvania)* (1943) 319 U.S. 157. This is because the Constitution's basic guarantee of freedom to advocate ideas is not confined to the expression of ideas which are conventional or shared by a majority.

*Kingsley Intern. Pictures Corp. v. Regents of University of State of N.Y.* (1959) 360 U.S. 684. This constitutional protection is not limited to the exposition of ideas: *Winters v. New York* (1948) 333 U.S. 507); the protection afforded to free speech extends to speech or publications which are entertaining as well as to those which are instructive or informative. *Weaver v. Jordan* (1966) 64 Cal.2d 235.

Thus, to the extent that the publications promoted by Responding Parties are made for political, economic, informational, or educational ends, they are protected by the First Amendment.

As an aside, Responding Parties note that Counsel for Plaintiff decry the fact that Responding Parties have published an anonymous work. In answer, Responding Parties would like to point out that the right to engage in anonymous speech is an aspect of the freedom of speech protected by the First Amendment. *Jaynes v. Com.* (2008) 276 Va. 443, 666 S.E.2d 303. Further, in the absence of some countervailing reason that will pass the highest possible strict scrutiny test, anonymous publications are entitled to protection under the First Amendment, particularly in view of the fact that anonymous pamphleteering played such an important role in the creation of the United States itself. Under the Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice but an honorable tradition of advocacy and dissent, and anonymity is a shield from the tyranny of the majority. *McIntyre v. Ohio Elections Com'n,* (1995) 514 U.S. 334.

Thus, Responding Parties respectfully request that unless Counsel for Plaintiff can show, in detail, that publications of Responding Parties are in some way illegal or fraudulent, that they would kindly get off the backs of Responding Parties on this issue.

Perhaps more tangent to the present Motion, however, freedom of speech and of the press, historically considered and taken up by the Federal Constitution, means principally, although not exclusively, immunity from prior restraints or censorship. *Smith v. Daily Mail Pub. Co.* (1979) 443 U.S. 97; *City of Lakewood v. Plain Dealer*

*Pub. Co.* (1988) 486 U.S. 750. The term "prior restraint", is a judicial order forbidding certain communications when issued in advance of the time that such communications are to occur. *Alexander v. U.S.* (1993) 509 U.S. 544; *In re Marriage of Meredith,* (2009) 201 P.3d 1056. A prior restraint is one of the most serious and least tolerable infringements on First Amendment Rights. *Berger v. City of Seattle* 569 F.3d. 1029 (9th Circ., 2009) *Freedom Communications, Inc. v. Superior Court* (4th Dist. 2008) 167 Cal.App.4th 150.

Even more cogent to the present discussion, temporary restraining orders, preliminary and permanent injunctions, and other court orders that actually forbid speech activities, are classic examples of prior restraints. *In re Marriage of Meredith, supra,* (2009) 201 P.3d. 1056. More to the point, each passing day of a prior restraint on speech may constitute a separate and cognizable infringement of the First Amendment. *Procter & Gamble Co. v. Bankers Trust Co.* (6th Cir. 1996) 78 F.3d 219.

This is not to say that all prior restraints are unconstitutional per se. As will be shown below, advocacy of illegal activity, fraudulent statements, and commercial speech may be regulated to a certain extent. But prior restraints have been accorded the most exacting scrutiny by the Supreme Court. *Vance v. Universal Amusement Co, Inc.* (1980) 445 U.S. 308. A system of prior restraint on expression avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. *McKinney v. Alabama* (1976) 424 U.S. 669.

The Supreme Court condemns systems in which the exercise of the power of public officials to deny use of a forum in advance of actual expression is not bounded by precise and clear standards; this distaste for censorship, reflecting the natural distaste of a free people, is deeply etched in American law. *Vance v. Universal Amusement Co. Inc., supra* (1980) 445 U.S. 308.

In order not to run afoul of the First Amendment, a system of prior restraint must contain the following safeguards: (1) the burden of instituting judicial proceedings and proving the material is unprotected must rest on the censor (here, Counsel for Plaintiff); (2) any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo; and (3) a prompt judicial determination must be assured. *Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546.

Responding Parties therefore argue that political and educational speech such as that which Responding Parties presently publish is under the full protection of the First Amendment; that speech and publications in print are presumed to be protected by the First Amendment; that prior restraints such as the present Motion for Preliminary Injunction are disfavored and condemned by the American system of justice in general and the Supreme Court in particular, and that the burden is on Counsel for Plaintiffs to prove that particular speech is unprotected by the First Amendment.

Responding Parties will also argue, for the reasons presented below, that Counsel for Plaintiff have totally failed to bear that burden, and the present Motion should therefore be denied on that ground alone.

v) **ASSUMING, *ARGUENDO*, COMPONENTS OF THE PUBLICATIONS MENTIONED ABOVE DO CONSTITUTE POLITICAL SPEECH, COUNSEL FOR PLAINTIFF HAVE FAILED TO DEMONSTRATE SUCH PUBLICATIONS CONSTITUTE ADVERTISING, OR SUCH PUBLICATIONS CONTAIN STATEMENTS WHICH CONSTITUTE TAX FRAUD**

The First Amendment, as applied to the states through the 14th Amendment, protects commercial speech from unwarranted governmental regulation. *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York* (1980) 447 U.S. 557. For purposes of the First Amendment, "commercial speech" is an expression solely related to the economic interests of the speaker and its audience, *U.S. v. Philip Morris USA Inc,* (D.C. Circ. 2009) 566 F.3d 1097, generally in the

22

form of commercial advertisement for the sale of goods and services (*Thompson v. Western States Medical Center* (2002) 535 U.S. 357; *Trustees of State University of New York v. Fox* (1989) 492 U.S. 469), or speech proposing a commercial transaction. *Bland v. Fessler*, (9th Circ. 1996) 88 F.3d 729.

Commercial speech enjoys a more limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression. *U.S. v. Edge Broadcasting Co.* (1993) 509 U.S. 418. In other words, commercial speech is entitled to the protection of the First Amendment, but the protection afforded commercial speech is somewhat less extensive than that afforded noncommercial speech. *Florida Bar. v. Went For It, Inc.* (1995) 515 U.S. 618.

Nonetheless, under the First Amendment, commercial speech cannot be banned because of an unsubstantiated belief that its impact is detrimental on the general populace, nor is the mere possibility that some members of the population may find particular advertising embarrassing or offensive a sufficient justification for suppressing it. *Linmark Associates, Inc. v. Willingboro Tp.* (1977) 431 U.S. 85; *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio* (1985) 471 U.S. 626.

More importantly, the party seeking to uphold a restriction on commercial speech carries the burden of justifying it. *Thompson v. Western States Medical Center* (2002) 535 U.S. 357. Further, a governmental body seeking to sustain a restriction on commercial speech must demonstrate the harms it recites are real, and that its restriction will in fact alleviate them to a material degree (*Greater New Orleans Broadcasting Ass'n, Inc. v. U.S.* (1999) 527 U.S. 173; *Liquormart, Inc. v. Rhode Island* (1996) 517 U.S. 484.

In context of the present Motion, Counsel for Plaintiff thus bears two burdens: 1) to show that particular speech made by or published by Responding

Parties constituted commercial speech, and 2) that such speech is sufficiently harmful to warrant prior restraint via injunctive relief.

As shown above, commercial speech is either commercial advertisement for the sale of goods and services, or speech proposing a commercial transaction. Counsel for Plaintiffs have taken great pains to assert the speech that Responding Parties allegedly committed six to eight years ago.  But that was then, and this is now.

Responding Parties have sought in vain to find in either in Counsel for Plaintiff's Complaint or their present Motion allegations as regards speech advertising anything but *The Art of Passing the Buck, Volumes 1 and 2.* Responding Parties have looked diligently at www.passingbucks.com and the above-mentioned volumes to find such advertising of any other goods or services besides the abovementioned volumes, or to lecture about those volumes, in vain.  It is also of value to note that while Counsel for Plaintiff have alleged much, they have quoted little, and nothing of value on this point, certainly not at least as regards commercial speech during the publication of either www.passingbucks.com or *The Art of Passing the Buck.*  Responding Parties assert that unless Counsel for Plaintiff are able to show such speech, they have failed in the burden of proving that either the texts of www.passingbucks.com or of *The Art of Passing the Buck* constitute commercial speech.

Further, even assuming, *arguendo*, that Counsel for Plaintiff are able to prove that Responding Parties have uttered or published commercial speech, Responding Parties  contend that Counsel for Plaintiff have failed either to quote, or to follow, an important test construing 26 USC 6700 or 7408: that in order to obtain an injunction under 26 USC 7408, Counsel for Plaintiff must show that (1) defendant organized or sold, or participated in the organization or sale of, an entity, plan or arrangement; (2) defendant made, or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan or

24

arrangement, (3) defendant knew or had reason to know that statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent the recurrence of the conduct. *United States v. Estate Preservation Services*, (9th Circ. 2000) 202 F.3d 1093 at 1098

While Counsel for Plaintiff may assert that www.passingbucks.com or *The Art of Passing the Buck* constituted "an entity, plan or arrangement", and thus prove the first point of this five point test, Counsel for Plaintiff have failed, after repeated requests (both here, in Responding Parties' Motion for Further Statement, and Responding Parties' Reply to Opposition to Motion for Further Statement) to show *with particularity* what statements published by Responding Parties constituted fraudulent statements concerning tax benefits to be derived from the plan, let alone the remaining points of the test.

Unless and until Counsel for Plaintiff can show false or fraudulent statements regarding tax law that have been made either in www.passingbucks.com or in *The Art of Passing the Buck*, Responding Parties contend that Counsel for Plaintiff have failed in bearing their burden, and the present Motion for Preliminary Injunction should be denied.

Even if, *arguendo,* Counsel for Plaintiff can show such false statements regarding tax law, Responding Parties repeat yet again the offer made in their initial Motion for Further Statement and their Reply, that they are more than willing to take any and all steps necessary to edit or otherwise remove any such false statements. Responding Parties would argue that such willingness would tend to negate points (3), (4), and (5) of the above test from *United States v. Estate Preservation Services*, and would operate to deny application of a preliminary injunction under 26 USC 7408.

D.        CONCLUSION

For the foregoing reasons, Responding Parties respectfully request the present Motion for Preliminary Injunction and Other Relief be denied.

Dated: October 18, 2010          RESPECTFULLY SUBMITTED,

Gwenn Wycoff, In propria persona

Frank Ozak, in propria persona

FILED

George McCalip, Trustee
P. O. Box 1250
Wilmington, CA 90748
Tel: 714-785-3685
Pro Se

2008 AUG 18  AM 11: 17

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

ORIGINAL

*Exhibit "A"*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>-v-<br><br>GEORGE E. MCCALIP, Trustee of The<br><br>Kenzington Fund Trust,<br><br>Respondent. | Case No. CV 08-4786-CAS (FFMx)<br><br>RESPONSE TO PETITION TO<br><br>ENFORCE INTERNAL REVENUE<br><br>SUMMONS |

Respondent objects to Petitioner's prayer on the following grounds:

**Bad Faith:**

This summons is part of a campaign by the IRS against Gwenn Wycoff and the persons (including trusts) associated with her. This is obvious from a reading of the Appeals Case Memorandum dated 06/04/2007 (Exhibit 1). The Memorandum, which allegedly establishes the basis of the purported assessment behind the summons in question in this case, makes the following false and unsubstantiated claims:

1. That Gwenn Wycoff is a promoter of abusive Trusts.

2. Gwenn Wycoff was the settler of Kenzington.

3. Mr. McCalip had taken an Oath of Privacy to Ms. Wycoff.

Response to Petition to Enforce IRS Summons                    Page 1 of 5 pages.

4. Kenzington would not cooperate with defendant's audit.

5. Ms. Lee was unable to determine who controlled the Trust and who were the Grantor and Beneficiaries.

In reality:

1. Ms. Wycoff does not promote abusive Trusts, but consults on how Trusts can operate within the law.

2. Scott Steinmann was the settler of The Kenzington Fund Trust as reported to the IRS on form S4 at the time Kenzington received its EIN. Ms. Wycoff is, as a contract employee, the Secretary of the Trust.

3. Mr. McCalip had taken an Oath of Privacy to The Kenzington Fund Trust, not Ms. Wycoff.

4. The record of the meeting between Mr. McCalip, as Trustee for Kenzington, and Ms. Lee shows that he cooperated to the fullest extent possible given his Oath of Privacy to The Kenzington Fund Trust.

5. The Trustees control the Trust and Ms. Lee had met with Mr. McCalip, as a Trustee for The Kenzington Fund Trust, on October 12, 2005. The Grantor, Scott Steinmann is listed on the S4 form on file with the IRS. The Beneficiary was reported on the 1041 and K1 forms filed with the IRS.

In addition to the bad faith demonstrated by Agent Lee in her report, Revenue Officer Jess Franco (aka "Jess De legarret") has continually acted in bad faith.

Gwenn Wycoff was summonsed to appear at the IRS office in Glendale on July 13, 2004 and September 13, 2004 by Officer Franco. Ms. Wycoff appeared as summonsed, accompanied by witnesses. Officer Franco refused to hold the meetings, and instead petitioned the court for an order to have her appear once again. His sworn statement to the court in support of the petition contains two blatant perjuries regarding the facts of the case (Exhibit 2).

Officer Franco's history and pattern of harassment of Ms. Wycoff extends to other persons associated with her (Exhibit 3).

On March 7, 2008 Officer Franco issued a summons by mail to George McCalip, as custodian of the

Response to Petition to Enforce IRS Summons                    Page 2 of 5 pages.

**No Confidentiality**

26 USC 6103 begins, "Returns and return information shall be confidential...". It then goes on to make enough exceptions so as to make a mockery out of the alleged confidentiality.

In as much as Respondent has a contractual obligation to The Kenzington Fund Trust to maintain confidentiality of all matters regarding the business of the Trust, he would be in breach of said contract were he to disclose the information requested. Should the IRS wish to indemnify Mr. McCalip against breach of said contract, and furthermore guarantee in writing that the information disclosed will be held in strictest confidence by only the Revenue Officer conducting the investigation and any other persons agreed to by Mr. McCalip, Mr. McCalip would obey a court order to breach said contract.

Asking the court to order anyone to breach a legitimate contract would be a *prima facie* abuse of the court's process.

**Powell Doctrine**

For the IRS to summons the information, they "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose." *United States v. Powell*, 379 U.S. 48 (1964).

In as much as this "investigation" is purportedly for the purpose of collecting against an alleged assessment, it will serve no such purpose since The Kenzington Fund Trust has no assets (Exhibit 4). Therefore, any request for a court order enforcing said summons is, once again, an abuse of the court's process.

**Fifth Amendment**

Mr. McCalip has made a sworn statement that The Kenzington Fund Trust has no assets (Exhibit 4); any order by the court to have him prove otherwise would be pointless. Were this not the case, any such order would be a prima facie violation of his Fifth Amendment right against self-incrimination. Therefore, any request for a court order enforcing said summons is, once again, an abuse of the court's process.

Response to Petition to Enforce IRS Summons                    Page 4 of 5 pages.

records of The Kenzington Fund Trust, to appear in the IRS office in Glendale on April 8, 2008 with all of the records for The Kenzington Fund for January 2007 to present. On March 31, 2008 at approximately 1:40 p.m. Officer Franco personally served a summons on George McCalip, as Trustee of The Kenzington Fund Trust, to appear in the IRS office in Glendale on April 30 with all of the records for The Kenzington Fund for January 2007 to present. Officer Franco had summonsed the exact same person to bring the exact same records to the exact same office on two separate occasions, 22 days apart. At what point do the actions of an IRS employee rise to the standard of harassment? Would it be when Officer Franco returned approximately five minutes later (i.e., at about 1:45 p.m.) on March 31, 2008, further interrupting Mr. McCalip's day by serving him yet another summons (Exhibit 3)?

**No Assessment**

Officer Franco alleges that:

> The purpose of the investigation is to make a determination of the collectability of the taxpayer's outstanding assessed tax liability for the subject tax year.

The IRS has yet to produce a copy of any assessment against The Kenzington Fund. In a hearing on February 28, 2007, Mr. McCalip demanded that the IRS prove the reasonableness of the purported assessment. Jerry Nielson, appearing on behalf of the IRS, never produced an assessment, or any proof that it was reasonable; he only read the (demonstrably false) allegations made by Agent Susan Lee (See Exhibit 1).

At a hearing on April 18, 2007, Mr. McCalip again demanded to see proof of any assessment and, as a matter of due process, to confront and question the person responsible for the alleged assessment. Once again the IRS failed to show any proof of the assessment.

Without an actual assessment, the "investigation" is groundless and any request for the court to issue an order regarding such "investigation" without actually producing the assessment is a blatant abuse of the court's process.

Response to Petition to Enforce IRS Summons                    Page 3 of 5 pages.

George McCalip, Trustee
P. O. Box 1250
Wilmington, CA 90748
Tel: 714-785-3685
Pro Se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CV 08-4786-CAS (FFMx) |
|---|---|
| Petitioner, | |
| -v- | Exhibit 1 |
| GEORGE E. MCCALIP, Trustee of The | |
| Kenzington Fund Trust, | |
| Respondent. | |

This Exhibit 1 provides a copy of the Appeals Case Memorandum dated June 4, 2007.

Exhibit 1                                                 Page 1 of 6 pages.

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 32 of 51   Page ID
#:343
Case 2:08-cv-04786-CAS-FFM   Document 8   Filed 08/18/08   Page 7 of 26   Page ID #:47

SCANNED

# APPEALS CASE MEMORANDUM

## COLLECTION DUE PROCESS – Jeopardy Levy

**NAME OF TAXPAYER: The Kenzington Fund Irrevocable Trust**

**TIN:** 95-7035553

**DATE:** 06/04/2007

**LIABILITY:** $80,447.32

> **Type of Tax:** Fiduciary Income/1041
>
> **Tax Period:** 12/2003

The Kenzington Fund Irrevocable Trust filed a timely Request for a Collection Due
Process (CDP) hearing, Form 12153:

| | |
|---|---|
| Date of CDP Notice: | 11/13/2006 |
| Date of request for hearing: | 12/06/2006 |
| Last date to request hearing: | 12/13/2006 |

### SUMMARY AND RECOMMENDATION

Was the levy action against the above named taxpayer appropriate?

Yes. The levy action against the Kenzington Fund Irrevocable Trust was appropriate.

### BRIEF BACKGROUND

The Kenzington Fund Irrevocable Trust (hereinafter KFIT) was established on
09/15/1997 by Gwenn H. Wycoff (SSN 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). KFIT's liability for the calendar
year 2003 was the result of Internal Revenue Service (IRS)'s jeopardy assessment
provided by Internal Revenue Code (IRC) §7429(a)(1).

In December 2003, the Revenue Agent (RA) Susan Lee began audit on Ms. Wycoff as
a promoter of abusive trust. All mails was returned by U.S. Postal Service unopened
with a hand written note of "R.T.S. (return to sender) – Refused". Ms. Wycoff failed to
appear for the scheduled meeting. RA Lee sent additional follow up letters and all were
returned by the U.S. P.S. unopened.

RA Ma then served a summons on Ms. Wycoff. She refused to accept the summons.
The summons was taped to the door at Wycoff's address.

Exhibit 1                                1                     Page 2 of 6 pages

Ms. Wycoff appeared for the interview as required on the summons but did not answer most of the questions by claiming the oath of privacy.

In April 2004, RA Lee issued a summons to a bank for bank statements. The taxpayer's copy of the summons mailed to Ms. Wycoff was returned unopened as "undeliverable as addressed".

On 09/13/2004, RA Lee received a petition filed with the Court to quash the summons. In December 2004, the Court dismissed the case in favor of the IRS.

On 09/13/2005, Revenue Officer (RO) Jess Franco was assigned KFIT's collection investigation program (CIP) case.

On 10/12/2005, RA Lee interviewed George McCalip, the trustee of KFIT. But Mr. McCalip failed to provide any of the requested documents. During the interview, RA Lee told Mr. McCalip that Ms. Wycoff has offshore investments in more than one foreign country. Mr. McCalip stated that he could not give any specific information because he took an oath of privacy with Ms. Wycoff.

At this juncture,  KFIT filed only the calendar year 2003 Form 1041 return that reported income of $96,246 and an equal amount as a distribution deduction, with a Schedule K-1 for the $95,246 issued to Equity Management Trust (EMT) c/o Noble Trust Services Co. RA Lee audited KFIT's 2003 Form 1041 return. During the audit, no substantiation was provided for this and other deductions on the return. Also, there was no record of EMT's filing any tax returns.

Ms. Wycoff and KFIT would not cooperate with RA Lee's audit; therefore, RA Lee reconstructed KFIT's income and expenses by using the summoned bank statements and adjusted KFIT's income as follow:

| | |
|---|---|
| Business Income | $73,823 (bank deposits) |
| Interest Income | 91,016 (per return) |
| Total | $164,839 |

Based on the events occurred during the examination, RA Lee felt that a jeopardy assessment was warranted due to Ms. Wycoff and KFIT's efforts to impede the process and Ms. Wycoff & KFIT's offshore investments/accounts. RA Lee felt that there was the likelihood that they would transfer assets outside the U.S. thereby jeopardizing the collection efforts.

Because Ms. Wycoff & KFIT did not cooperate, RA Lee was unable to determine who controlled the trust and who were the grantor and beneficiary (ies) of the trust, and the sources of income.

On or about 10/25/2006, RA Lee submitted a recommendation to Area Counsel for a jeopardy assessment against KFIT. On 10/26/2006, RO Franco submitted a request to

Exhibit 1

2

Page 3 of 6 pages

Area Counsel for an approval for filing a Notice of Federal Tax Lien (NFTL) and levies pursuant to jeopardy assessment against KFIT.

On 11/02/2006, Area Counsel's Atty. Gavin L. Greene approved the jeopardy assessment and collection.

On 11/06/2006, Internal Revenue Service (IRS) Compliance Examination Area sent KFIT the Notice of Jeopardy Assessment and Right to Review for the calendar year 2003 liability.

On 11/13/2006, RO Franco served a Notice of Levy (Form 668-A) to US. Bank to attach KFIT's funds and sent KFIT the taxpayer's copy of Notice of Levy (Form 668-A)

On 12/06/2006, KFIT timely filed a Request for a Collection Due Process (CDP) Hearing (Form 12153) for the Jeopardy levy.

On 12/11/2006 KFIT filed a protest for the jeopardy assessment for an administrative review. On 02/21/2007, Appeals Officer (AO) Jerry Nielsen held a conference with KFIT's trustee Geo McCalip. AO Nielsen cited Policy Statement P-4-88 and Court cases Penner v. US 84-2 USTC 9775, Jensen 87-1 USTC, DC Calif., & Sandra Welsh v. U.S. 84-2 USTC 9826, and recommended to sustain the jeopardy assessment. On 03/02/2007 Los Angeles Appeals sent KFIT the Notice of Determination sustaining the 11/06/2006 jeopardy assessment.

## DISCUSSION AND ANALYSIS

### 1. Verification of Legal and Procedural Requirements

I have reviewed RO Franco's file as well as the transcript for the liability listed above. I have also reviewed any documentation submitted by Mr. McCalip on behalf of KFIT. After review, I found that the requirements of all applicable law and/or administrative procedures, including Internal Revenue Code (IRC) §7429(a), §6330(j). & §6331(a) were met on this case.

- There is unpaid balance of assessment for the period at issue
- The assessment was made timely within the statutory period
- Notice and Demand was made for payment of each liability
- Area Counsel approval was secured prior to initiating the Notice of jeopardy levy

The Settlement Officer has had no prior involvement with respect to the appealed liabilities in Appeals and/or Compliance.

Exhibit 1                              3                         Page 4 of 6 pages

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 35 of 51   Page ID
#:346
Case 2:08-cv-04786-CAS-FFM   Document 6   Filed 08/18/08   Page 10 of 26   Page ID #:50

SCANNED

## 2. Issue Raised by the Taxpayer

**Underlying Liabilities**

In the letter, dated 12/04/2006, attached to the Request for a CDP Hearing (Form 12153) Mr. McCalip stated that he has no personal knowledge of the events that occurred during the tax year ending December 31, 2003 because he became a trustee in May of 2004 and that he failed to find anything that would serve as a basis for the levy. Mr. McCalip did not provide any specific reasons for filing a Request for CDP Hearing.

Internal Revenue Code (IRC) §6330(c)(2)(B) provides:

> *UNDERLYING LIABILITY - The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.*

As already mentioned above, Appeals had sustained the Compliance jeopardy assessment. KFIT has the right for a judicial review as provided by IRC §7429(b)(2)(B) within 90 days of the statutory notice of deficiency (SND).

On 01/09/2007, Compliance sent KFIT the SND. Therefore, KFIT has until 04/09/2007 to file a Tax Court petition to challenge the underlying liability.

During the 04/18/2007 conference, Mr. McCalip stated that KFIT did not file a petition with the Tax Court to dispute AO Nielsen's decision sustaining the Compliance's 11/06/2006 jeopardy assessment.

On 05/21/2007, I received Mr. McCalip's 05/16/2007 letter requesting to reconvene the hearing and to have RA Lee to testify. Mr. McCalip's request has no merit as KFIT already has had a prior opportunity to dispute the underlying liability in this case.

**Collection Alternatives**

During the 04/18/2007, KFIT's trustee, Geo McCalip stated that he had the opportunity to review KFIT's documents retrieved from storage and would check with the board of directors for approval to providing the documents relevant for audit reconsideration. The deadline of 05/18/2007 was set for Mr. McCalip to provide the required documents for audit reconsideration, including the unfilled Form 1041 returns for the calendar years 2004 & 2005, i.e., the periods after he became KFIT's trustee.

In the letter, dated 05/16/2007, Mr. McCalip stated:

Exhibit 1                                    4                        Page 5 of 6 pages

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 36 of 51   Page ID
#:347
· Case 2:08-cv-04786-CAS-FFM   Document 8   Filed 08/18/08   Page 11 of 26   Page ID #:51

SCANNED

*"As for your request that we produce certain documents, my fellow Trustees see no reason to produce anything that you do not already have, in that the IRS already claims to have substantial proof of our tax burden for the year in question."*

Mr. McCalip failed to meet the 05/18/2007 deadline for the required documents, including (1) relevant documents for audit reconsideration; (2) unfilled Form 1041 returns for the calendar years 1999, 2000, 2001, 2002, 2004, 2005, & 2006; and (3) Collection Information Statement (CIS) for Business (Form 433B) with supplemental financial information.

**Compliance**

As already mentioned above, KFIT is not in compliance with filing returns. More specifically, to date, KFIT filed the only return for the calendar year 2003 since it was established in September 1998. More specifically, KFIT has not filed the calendar year 1999, 2000, 2001, 2002, 2004, 2006, & 2006 Form 1041 returns.

Because KFIT is not in compliance with filing return, collection alternatives could not be considered in this case.

**Ability to Pay & Equity in Assets**

KFIT failed to provide a CIS (Form 433B) with supplemental financial information. Consequently, I was unable to evaluate KFIT's ability to pay and equity in assets.

### 3. Balancing Efficient Collection and Intrusiveness

Compliance's 11/13/2006 jeopardy levy action was approved by Area Counsel as provided by IRC §7249(a) and considered by Appeals in a separate administrative review that was conducted by AO Jerry Nielsen as discussed above. The proposed levy action is deemed appropriate in this case due to KFIT's lack of cooperation with Compliance and Appeals. KFIT is not in compliance with filing returns and offered no alternatives to resolve their liability. The jeopardy levy action balances the need for the efficient collection of taxes with KFIT's legitimate concern that any collection action be no more intrusive than necessary.

Exhibit 1                                          5                              Page 6 of 6 pages

George McCalip, Trustee
P. O. Box 1250
Wilmington, CA 90748
Tel: 714-785-3685
Pro Se

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Petitioner,<br><br>                 -v-<br><br>GEORGE E. MCCALIP, Trustee of The<br>Kenzington Fund Trust,<br><br>                              Respondent. | Case No. CV 08-4786-CAS (FFMx)<br><br><br>                 ·  Exhibit 2 |

CONTENTS                                                          PAGE

DECLARATION IN SUPPORT OF PETITION TO                              2
ENFORCE INTERNAL REVENUE SUMMONS

STATEMENT OF FACT BY GWENN H. WYCOFF                               5

Exhibit 2                                          Page 1 of 5 pages.

<u>DECLARATION IN SUPPORT OF PETITION</u>

<u>TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS</u>

I, Jess M. Franco, pursuant to 28 U.S.C. § 1746(2), declare and state as follows:

1. I am over eighteen years of age, and am not a party to the above-entitled action.

2. My name as used and signed in the summons and this Declaration is not a pseudonym.

3. I am employed as a Revenue Officer in the Glendale office, Area 16, Compliance, Small Business/Self-Employed Division, of the Internal Revenue Service ("IRS"). I am authorized to issue IRS summonses under the authority of § 7602 of the Internal Revenue Code (26 U.S.C.) ("IRC" and "the Code"). <u>See</u> Treasury Regulation § 301.7602-1; IRS Delegation Order No. 4 (as revised).

4. In my capacity as a Revenue Officer, I am conducting an investigation into the tax liabilities of Gwen Wycoff for the years 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003.

5. In furtherance of the above-referenced investigation and in accordance with 26 U.S.C. § 7602, on June 29, 2004, I issued a summons (IRS Form 2039) to Gwen Wycoff to give testimony and produce documentation on July 13, 2004, relating to the income tax liabilities described in said summons. A copy

-11-

Exhibit 2                                        Page 2 of 5 pages

of the summons is attached hereto as Exhibit 1.

6.   On June 29, 2004, an attested copy of the IRS summons was personally served on Gwen Wycoff, which was accomplished by handing a copy of the summons to Gwen Wycoff.   A copy of the certificate of service with respect to the summons is attached hereto as page 2 of Exhibit 1.

7.   Gwen Wycoff did not appear in response to the summons on July 13, 2004, nor did she provide the documents or other items required to be provided pursuant to the summons at that time.

8.   On September 3, 2004, a letter was sent by the Office of Chief Counsel to Gwen Wycoff at 3111 South Barrington Avenue, # 15, Los Angeles, CA 90066-1190, directing Gwen Wycoff to appear in response to the summons on September 15, 2004, and advising that the Internal Revenue Service would proceed with enforcement action in Federal District Court if she failed to appear.

9.   Respondent failed to appear on September 15, 2004.

10.   Gwen Wycoff continues to be in non-compliance with the Summons with respect to taxable years 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003.

11.   The books, papers, records and other data sought by the summons are not within the possession of the IRS.

12.   All administrative steps required by the Internal

-12-

Exhibit 2                                                                           Page 3 of 5 pages

Case 2:10-cv-05856-JHN-PLA    Document 11    Filed 10/18/10    Page 40 of 51    Page ID
#:351
FROM Case 2:08-cv-04786-CAS-FFM    Document 8    Filed 08/18/08    Page 15 of 26    Page ID #:55

Revenue Code for the issuance of the summons have been taken.

13. It is necessary to obtain the documents and testimony sought by the summons, with respect to taxable years 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003 in order to properly investigate the federal tax liabilities of Gwen Wycoff for those years.

14. No recommendation for criminal prosecution of Gwen Wycoff has been made by the IRS to the United States Department of Justice. In addition, no Department of Justice referral, as described in 26 U.S.C. § 7602(c) is in effect with respect to the taxpayer.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this __11TH__ day of __JANUARY__, 2005, at __GLENDALE__, California.

_____
JESS M. FRANCO
Revenue Officer
Internal Revenue Service

-13-

Exhibit 2                                                    Page 4 of 5 pages

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 41 of 51   Page ID
#:352
Case 2:08-cv-04786-CAS-FFM   Document 8   Filed 08/18/08   Page 16 of 26   Page ID #:56

Statement of Fact                                                    August 16, 2008

On July 13, 2004 at 10:00 a.m., in response to a summons from Revenue Officer Jess
Franco, I appeared at the IRS office located at 225 West Broadway, Glendale, California.
I was there with such records as had been summonsed and was prepared to present said
records to Officer Franco. I also had witnesses present. When officer Franco saw the
witnesses he refused to hold the meeting.

On September 15, 2004, in response to a summons from Revenue Officer Jess Franco, I
appeared once again at the IRS office located at 225 West Broadway, Glendale,
California. I was once again there with such records as had been summonsed and was
prepared to present said records to Officer Franco. I once again had witnesses present.
When officer Franco saw the witnesses he once again refused to hold the meeting.

Dated August 16, 2008
Gwenn H. Wycoff

I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.

Dated August 16, 2008
Gwenn H. Wycoff

Exhibit 2                                          Page 5 of 5 pages

George McCalip, Trustee
P. O. Box 1250
Wilmington, CA 90748
Tel: 714-785-3685
Pro Se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Petitioner,

          -v-

GEORGE E. MCCALIP, Trustee of The

Kenzington Fund Trust,

                Respondent.

Case No. CV 08-4786-CAS (FFMx)

Exhibit 3

CONTENTS

| | PAGE |
|---|---|
| Statement of Fact by Frank C. Ozak | 2 |
| Statement of Fact by Robert L. McCalip | 3 |
| Summons to George McCalip as Custodian of Records (March 7, 2008) | 4 |
| Summons to George McCalip as Trustee (March 31, 2008) | 5 |
| Summons to George McCalip (March 31, 2008) | 6 |
| Statement of Fact by Geo. McCalip | 7 |

Exhibit 3

Page 1 of 7 pages.

Statement of Fact                                                    August 17, 2008

I have assisted  The Kenzington Fund on various trusts. Through my association with The Kenzington Fund, I have come to the attention of US Internal Revenue Service and particularly Internal Revenue Officer Jess Franco, a.k.a. Jess De Legarret, ID # 95-09458 (De Legarret). I believe it is because of this association that I have been summonsed twice to the IRS office in Glendale, CA.

On Wednesday, August 13, 2008, I appeared for second time before De Legarret with three witnesses present. At that time I offered him my books and records if he would guarantee not to violate my Constitutional Rights. He would not accept the books and records under this condition. Also De Legarret and Internal Revenue Officer Ted Hanson, ID # 95-05781 stated that they had no claims against me and did not know of anyone who did.

In my opinion, De Legarret has targeted persons (including trusts) associated with The Kenzington Fund for undue and excess investigation, which at least borders on harassment.

Without prejudice,[1]

Frank C. Ozak

August 17, 2008

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated August 17, 2008
Frank C. Ozak

---

[1]     UCC -1-207

Exhibit 3                                                            Page 2 of 7 pages

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 44 of 51   Page ID
#:355
Case 2:08-cv-04786-CAS-FFM   Document 8   Filed 08/18/08   Page 19 of 26   Page ID #:59

On March 31, 2008 at approximately 1:40 p.m. I answered my door. A man at the door asked if George McCalip (my son) was present. I said that I believed so, and asked him to wait while I checked. I found my son upstairs and told him that there was a man at the door asking for him.

My son went down to the door, had a conversation with the man, and returned with a large envelope. He explained that the man was a Revenue Officer with the IRS and had just served him papers regarding a Trust matter. He then went back upstairs to make a phone call.

About five minutes later I answered the door again. The same man asked, once again, for George McCalip. Once again I went upstairs and informed my son that the man was at the door asking for him.

My son went down to the door again, had another conversation with the man, and returned with another large envelope.

*Robert L. McCalip*

Dated August 16, 2008
Robert L. McCalip

I declare under penalty of perjury that the foregoing is true and correct.

*Robert L. McCalip*

Dated August 16, 2008
Robert L. McCalip

Exhibit 3                                                                           Page 2 of 7 pages



# Summons

## Collection Information Statement

**In the matter of** _Kenzington Fund Irrevocable Trust 091597_

**Internal Revenue Service** *(Identify Division)* _Small Business/Self Employed_

**Industry/Area** *(Identify by number or name)* _Small Business/Self Employed - California Area_

**Periods:** _U.S. Income Tax Return for Estates and Trust Period Ending: 12-31-2003_

### The Commissioner of Internal Revenue

**To:** _Custodian of Records_ – _Kenzington Fund Irrevocable Trust 091507_ – George McCalip Trustee

**At:** _3250 Olympic Blvd #10, Santa Monica, CA 90404_

You are hereby summoned and required to appear before _Jess De Legarret_, an Internal Revenue Service *(IRS)* officer, to give testimony and to bring for examination the following information related to the collection of the tax liability of the person identified above for the periods shown:

All documents and records you possess or control regarding assets, liabilities, or accounts held in the taxpayer's name or for the taxpayer's benefit which the taxpayer wholly or partially owns, or in which the taxpayer has a security interest. These records and documents include but are not limited to: all bank statements, checkbooks, canceled checks, saving account passbooks, investment account statements, records or certificates of deposit for the period:

From _January 01, 2007_ To _Present_

Also include all current vehicle registration certificates, deeds or contracts regarding real property, stocks and bonds, accounts, notes and judgments receivable, signed Form 56, copy of trust instrument and all amendments, names and addresses of trustees & beneficiaries, and all life or health insurance policies.

IRS will use this information to prepare a Collection Information Statement. We have attached a blank statement to guide you in producing the necessary documents and records.

### Do not write in this space

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_Jess De Legarret_
Signature of IRS Official Serving the Summons

_Revenue Officer, 95-09458_
Title

**Business address and telephone number of IRS officer before whom you are to appear:**

225 W. Broadway-3rd Floor, Glendale, CA 91204  (818)265-2329 ext.4048

**Place and time for appearance at:** _225 W. Broadway-3rd Floor, Glendale, CA 91204_

**IRS**

on the _8th_ day of _April_, _2008_ at _10:00_ o'clock _A_ m.

Issued under authority of the Internal Revenue Code this _7TH_ day of _MARCH_, _2008_

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 6637 (Rev.4-2005)
Catalog Number 25000Q
Exhibit 3

_Jess De Legarret_
Signature of Issuing Officer

_M.J. Hadley_
Signature of Approving Officer *(if applicable)*

Revenue Officer
Title

Group Manager
Title

Page 7 of 7 pages

**Part A – to be given to person summoned**

Case 2:10-cv-05856-JHN-PLA    Document 11    Filed 10/18/10    Page 46 of 51    Page ID
#:357
Case 2:08-cv-04786-CAS-FFM    Document 8    Filed 08/18/08    Page 21 of 26    Page ID #:61

# Summons

## Collection Information Statement

**In the matter of** _Kenzington Fund Irrevocable Trust 091597_

**Internal Revenue Service** *(Identify Division)* _Small Business/Self Employed_

**Industry/Area** *(Identify by number or name)* _Small Business/Self Employed - California Area_

**Periods:** _U.S. Income Tax Return for Estates and Trust Period Ending:12-31-2003_

### The Commissioner of Internal Revenue

**To:** _George E. McCalip as Trustee of Kenzington Fund Irrevocable Trust 091507_

**At:** _454 E. 247TH STREET, CARSON, CA 90245_

You are hereby summoned and required to appear before Jess De Legarret, an Internal Revenue Service *(IRS)* officer, to give testimony and to bring for examination the following information related to the collection of the tax liability of the person identified above for the periods shown:

All documents and records you possess or control regarding assets, liabilities, or accounts held in the taxpayer's name or for the taxpayer's benefit which the taxpayer wholly or partially owns, or in which the taxpayer has a security interest. These records and documents include but are not limited to: all bank statements, checkbooks, canceled checks, saving account passbooks, investment account statements, records or certificates of deposit for the period:

From_ January 01, 2007 _To_ Present

Also include all current vehicle registration certificates, deeds or contracts regarding real property, stocks and bonds, accounts, notes and judgments receivable, signed Form 56, copy of trust instrument and all amendments, names and addresses of trustees & beneficiaries, and all life or health insurance policies.

IRS will use this information to prepare a Collection Information Statement. We have attached a blank statement to guide you in producing the necessary documents and records.

### Do not write in this space

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____     _Revenue Officer, 95-09458_____
Signature of IRS Official Serving the Summons          Title

**Business address and telephone number of IRS officer before whom you are to appear:**

225 W. Broadway-3rd Floor, Glendale, CA 91204  (818)265-2329 ext.4048

**Place and time for appearance at:** _225 W. Broadway-3rd Floor, Glendale, CA 91204_

**IRS**

on the _30th_day of _April_ , _2008_ at _10:00_ o'clock _A_ m.

Issued under authority of the Internal Revenue Code this _31st_ day of _MARCH_____ , _2008_

Department of the Treasury
Internal Revenue Service          _____          _Revenue Officer_____
                                  Signature of Issuing Officer          Title

www.irs.gov                       _____          **Group Manager_____**
Form 6637 (Rev.4-2005)            Signature of Approving Officer *(if applicable)*          Title
Catalog Number 25000Q

Exhibit 3                                                  Page 6 of 7 pages

                                                          **Part A -- to be given to person summoned**



# Summons

In the matter of **George E. McCalip**

Internal Revenue Service (Division): **Small Business/Self Employed**

Industry/Area (name or number): **Small Business/Self Employed - California Area**

Periods: **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**

## The Commissioner of Internal Revenue

To: **George E. McCalip**

At: **Street, Carson, CA 90745**

You are hereby summoned and required to appear before Jess De Legarret, an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

All documents and records in your possession or control reflecting the receipt of taxable income by you for the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**, including but not limited to: statement of wages for the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**, statements regarding interest or dividend income for the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**; employee earnings statements for the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**; records of deposits to bank accounts during the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present**; and any and all other books, records, documents, and receipts regarding wages, salaries, tips, fees, commissions, and any other compensation for services (including gains from dealings in property, interest, rental, royalty and dividend income, alimony, annuities, income life insurance policies and endowment contracts, pensions, income from the discharge of indebtedness, distributive shares of partnership gross income, and income from an estate or trust), so that Federal Income Tax liability for the year(s) **U.S. Individual Income Tax Return Periods Ending:12-31-1999 to Present** (for which year(s) no return have been made) may be determined.

### Do not write in this space

**Business address and telephone number of IRS officer before whom you are to appear:**

225 W. Broadway-3rd Floor, Glendale, CA 91204   (818)265-2329 ext.4048

**Place and time for appearance at**   225 W. Broadway-3rd Floor, Glendale, CA 91204

**IRS**

Department of the Treasury

Internal Revenue Service

www.irs.gov

Form 2039(Rev. 12-2001)

Catalog Number 21405J

Exhibit 3

on the __23rd__ day of __April__ , __2008__ at __10:00__ o'clock __A__ m.

Issued under authority of the Internal Revenue Code this __31ST__ day of __MARCH__ , __2008__

_signature_
Signature of Issuing Officer

__Revenue Officer__
Title

__N/A__
Signature of Approving Officer *(if applicable)*

__N/A__
Title

Page 6 of 7 pages

## EXHIBIT 1

Original -- to be kept by IRS

Statement of Fact                                                              August 16, 2008

On September 28, 2005 at approximately 10:00 a.m. I accompanied Gwenn H. Wycoff to a meeting at the IRS office at 225 West Broadway in Glendale, California. I was present to witness what transpired at the meeting.

I had not met Revenue Officer Jess Franco prior to that time. However, after the meeting with Ms. Wycoff concluded, as we (my fellow witnesses and I) were leaving, Officer Franco asked me to stay behind.

I inquired as to why and he responded with a very vague answer. I replied that I had arrived as a passenger in someone else's car and would not be able to stay.

After that, without any further communication, Officer Franco levied my checking account twice.

This year he has both levied my checking account again and summonsed me.

Given the experiences of Gwenn Wycoff and Frank Ozak, I believe that I was singled out by Officer Franco for this treatment because of my association with Gwenn Wycoff. I further believe that this type of attempted intimidation and the chilling effect it is meant to have is a blatant abuse of authority under color of law.

Dated August 16, 2008
Geo. McCalip

I declare under penalty of perjury that the foregoing is true and correct.

Dated August 16, 2008
Geo. McCalip

Exhibit 3                                                                     Page 7 of 7

Case 2:10-cv-05856-JHN-PLA   Document 11   Filed 10/18/10   Page 49 of 51   Page ID
#:360
Case 2:08-cv-04786-CAS-FFM   Document 8   Filed 08/18/08   Page 25 of 26   Page ID #:65

Statement of Fact                                          August 16, 2008

The Kenzington Fund Trust has no assets. Investments made by the Trust prior to 2007 have proven worthless (i.e., they have a current value of $0.00). The only assets the Trust had other than those investments was the cash in two checking accounts, one with U.S. Bank, the other with Wells Fargo.

Revenue Officer Jess Franco levied the two accounts and left the Trust with a negative balance in each account due to service charges. The accounts have since been closed.

Dated August 16, 2008
Geo. McCalip, Trustee

I declare under penalty of perjury that the foregoing is true and correct.

Dated August 16, 2008
Geo. McCalip, Trustee

Exhibit 4                                                  Page 2 of 2 pages

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Petitioner,<br><br>               -v-<br><br>GEORGE E. MCCALIP, Trustee of The<br><br>Kenzington Fund Trust,<br><br>                              Respondent. | Case No. CV 08-4786-CAS (FFMx)<br><br>PROOF OF SERVICE<br><br>BY MAIL |

I am over the age of 18 and not a party to this action.

I reside at 311 E. 244th St., Carson, California in the County of Los Angeles.

I served a copy of the RESPONSE TO PETITION TO ENFORCE INTERNAL REVENUE SUMMONS and Exhibits 1 through 4 in the above case by enclosing it in an envelope and depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

The envelope was addressed and mailed as follows:

Address:   Thomas P. O'Brien, US Attorney
Sandra R. Brown, AUSA
Darwin Thomas, AUSA
Room 7211 Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012

Date Mailed:   August 18, 2008

Mailed From:   Los Angeles, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 18 August 2008

Herb Peters

**PROOF OF SERVICE BY MAIL**

**STATE OF CALIFORNIA**           )

                                  )    **SS**

**COUNTY OF LOS ANGELES**         )

ORIGINAL

I am resident of the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My resident address is:

2295 North Tustin Street, No. 19, Orange, CA  92865

On October 18, 2010 I mailed the foregoing documents described as:

**Case No. CV 10-5856 JHN (PLAx)**

**OPPOSITION TO MOTION**

**FOR PRELIMINARY INJUNCTION AND OTHER RELIEF;**

**EXHIBITS A TO C.**

on the interested parties in this action by placing a true copy therefore enclosed in a sealed envelope address as follows:

BRIAN H. CORCORAN
Trial Attorney, Tax Division
U.S Department of Justice
Post Office Box 7238
Washington, DC  20044

With a return address of:

Gwenn H. Wycoff and Frank C. Ozak
2801 Ocean Park Blvd., No. 296
Santa Monica, CA  90405

I placed such envelope(s) with fully paid 1st class postage affixed, in the United States mail at West Los Angeles, California.

Executed on October 18, 2010 at West Los Angeles, California.

I declare under a penalty of perjury under the laws of the State of California that the above is a true and correct.

Heidemarie Kauahikaua