ANDRÉ BIROTTE JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
DARWIN THOMAS
Ca. Bar No. 80745
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2740
Facsimile:   (213) 894-0115
Email: darwin.thomas@usdoj.gov

BRIAN H. CORCORAN
Member, DC Bar, No. 456976
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Facsimile: (202) 514-6770
E-mail: brian.h.corcoran@usdoj.gov

Attorneys for Plaintiff, United States

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. CV10-5856-JHN (PLAx) |
| GWENN WYCOFF, and | ) **REPLY IN SUPPORT OF MOTION FOR** |
| FRANK OZAK, | ) **PRELIMINARY INJUNCTION AND OTHER RELIEF** |
| Defendants. | ) |

Date: November 8, 2010
Time: 2 p.m.
Place: Ctrm. 790
255 East Temple St.
Los Angeles, CA 90012

The United States of America ("United States"), for its reply in further support of its motion for a preliminary injunction against Defendants Gwenn Wycoff and Frank Ozak, respectfully states as follows:

## ARGUMENT

### I.  The Defendants Have Failed to Even Attempt to Rebut the Government's Factual and Legal Proof Establishing Grounds for Entry of a Preliminary Injunction.

The Defendants' brief in opposition to the United States' Motion, replete as it is with tangled argumentation and asides on such matters as the definition of "Augean," fails in a critical respect: it does not even attempt to rebut the United States' ample showing that the Defendants should be preliminarily enjoined under 26 U.S.C. ("I.R.C.") Sections 7407 and/or 7408.  As the Government's motion papers describe, Wycoff and Ozak have over the past several years repeatedly assisted individuals in setting up, and then operating, sham "common law" trusts for the purposes of tax evasion.  Although the trusts appear facially to adhere to the proper structure and formalities of legitimate trusts - such as having independent trustees make trust decisions - the real goal of the Defendants is aptly stated in their oft-used advertising tag "own nothing, control everything," and this is accomplished by allowing the trusts creators to continue to participate actively in trust operations.  The purpose of these sham trusts is thus to evade federal income taxation by creating a false appearance of separation between a customer and his business activity and income.

The Government has supported its contentions in the motion with five separate declarations as well as numerous exhibits.  This evidence - all of which, contrary to the Defendants' assertions, this Court may consider it ruling on the motion (*see* Brief in Support of Motion for Preliminary Injunction, dated October 8, 2010 (Docket No.

10)("Motion") at 15-16) - documents just a few of the many instances in which the Defendants specifically aided customers, such as Rex Wilson or Rita and George Serban, in setting up and then operating common law trusts which the IRS later found should be disregarded for tax purposes. In each such case, after relying on the advice and accepting the assistance of the Defendants, the Defendants' customers ended up owing large amounts of unpaid federal income taxes. Applying such facts, the Governments' brief ultimately walked through the law to demonstrate why such conduct violates Sections 6700 and/or 6701 of the Internal Revenue Code, and therefore why a preliminary injunction under either Section 7408 or 7402 is appropriate under the circumstances. (Motion at 14-23).

Although the Defendants' brief questions the propriety of an injunction for a variety of novel reasons, they make no attempt to rebut any of the above, whether by offering declarations contesting the Government's recitation of facts[1], documentary evidence that contradicts the Government's arguments about their role in the establishment of sham trusts, or citations to law defending the legality of their conduct. They therefore have conceded the central component of the Government's argument - that they <u>have</u> engaged in conduct violating the Internal Revenue Code under Sections 6700 and/or 6701. This is a critical element of the overall determination as to whether a preliminary injunction is appropriate under Sections 7402 or 7408.

Because the Defendants have also failed to rebut the Government's contentions that an injunction is appropriate given the scope and ongoing nature of the

---

1. At best, the Defendants both attempted to file one-page declarations with their opposition brief setting forth factual assertions about the scope of their recent conduct, but this Court has rejected these two filings on procedural grounds (Docket Nos. 12 and 13).

3

Defendants' illegal conduct (Motion at 18-20, 21-23), this Court should grant the Government's motion.

**II.    The Preliminary Injunction Motion Was Served and Asserted in A Timely Fashion.**

The Defendants' opposition brief strings together a number of arguments challenging the timeliness of the injunction motion. First, the Defendants assert that the motion was untimely under Fed. R. Civ. P. 65(b)(3), because they received the brief only six days before their response was due. This argument, however, betrays a misunderstanding of both the Federal Rules as well as this Court's rules of practice. As the Court is doubtless aware, Rule 65(b) governs motions for temporary restraining orders - a type of limited, but immediate, injunctive relief sought to preserve the status quo prior to the time a formal preliminary injunction motion can be heard. Because in some circumstances a motion for a TRO may be granted without prior notice to the adverse party, Rule 65(b)(3) requires expediting the subsequent preliminary injunction hearing. Fed. R. Civ. P. 65(b)(3). That rule has no application here, as the Government filed its motion for a preliminary injunction (not a motion for a temporary restraining order) on notice to the Defendants and over a month prior to the November 8, 2010 hearing date.

Second, the Defendants suggest they were not properly and timely served with the motion, but this too is false. In accordance with Local Rule 6-1 and this Court's procedures for motions practice, the Government filed and served this motion by mail on October 8, 2010 - 31 days from the selected November 8th hearing date. Any expedience required of the Defendants is in this case a product of the local rules on motions practice, which mandate the filing of any opposition brief within 21 days of

the hearing date.[2] Certainly the Defendants never contacted counsel for the Government to ask for any extensions of time, belying their complaints that they have been denied "due process" on this basis.

More broadly, the Defendants assert that the motion is untimely from an equitable standpoint (and therefore should be barred under the doctrine of laches) because the Government delayed two years in bringing this suit after a prior summons enforcement proceeding against the Defendants two years ago (discussed below). In fact, the Government brought this action only after it was certain it possessed sufficient evidence and proof to support the allegations it has made in the complaint generally, as well as the specific relief it seeks in the motion - an investigative process which takes time. The process was certainly not assisted by the Defendants, who (as the complaint and motion set forth) have repeatedly resisted the Government's investigative efforts, filing frivolous lawsuits against IRS personnel to block efforts by the Government to obtain the evidence needed to prosecute the matter. In an event, arguments about delay in bringing this action are relevant only insofar as they relate to assertions that the Defendants' purported violations of the Internal Revenue Code have ceased - arguments that the Defendants have not raised in their opposition papers. And even if such arguments had been raised, they are only relevant to the

---

2. Some of the Defendants' arguments about the timeliness of the Government's motion border on the silly. Thus, Wycoff and Ozak's brief asserts in passing that the preliminary injunction motion was unreasonably interposed before the Defendants had sufficient time to respond to the Government's very complaint - *filed on August 6, 2010.* (Opposition at 13). With more than two months having since passed, one might wonder how much more time the Defendants believe is reasonable in preparing an answer - certainly more than the 20 days provided by the Federal Rules, it would seem.

scope of injunctive relief that the Court should fashion, given the Government's unrebutted factual and legal showings herein establishing violations of the tax laws.

**III.     The Commercial Speech Component of the Defendants' Publications Can be Preliminarily Enjoined Without Impinging Upon the Defendants' First Amendment Rights.**

Much of the Defendants' opposition brief is devoted to an attempt to persuade this Court that the published materials comprised by The Art of Passing the Buck are shielded from injunctive relief by the First Amendment of the U.S. Constitution.[3]  In particular, (and after a five-page extended throat clearing setting forth the protections generally afforded political speech, as well as the prohibitions on prior restraints (Opposition at 18-22)) the Defendants deny that The Art of Passing the Buck contains anything within it "proposing a commercial transaction." (Opposition at 24).  Indeed, Wycoff and Ozak argue, they themselves "sought in vain" to find anything in their own materials that would constitute commercial speech.

Ignoring the incredibly self-serving nature of such an assertion, the Government has already detailed in its motion papers - with reference to specific pages of the materials in question - that not only does The Art of Passing the Buck contain numerous statements about both the purported tax advantages of common law trusts, as well as the guidelines for setting one up, but the end-pages of both volumes directly invite readers to contact "Charles Arthur Enterprises" (meaning Wycoff and Ozak) for

---

3. Importantly - and contrary to the impression given by the Defendants' opposition brief - the scope of the relief sought by the Government's motion goes well beyond simply asking the Court to limit or restrict in some way the commercial speech elements of the Defendants' published materials.  The Government's motion seeks to preliminarily enjoin the Defendants from promoting, as well as assisting in the operation, of sham common law trusts.  The challenged portions of publications like The Art of Passing the Buck are only one aspect of the Defendants' illegal conduct.

assistance in setting up and operating just such trusts. (See Exhibit 6 to Lee Declaration, attached to Motion as Exhibit A, and Exhibit B to Motion). The purpose of these materials is not simply to voice the Defendants' frivolous beliefs about the Government or the power of sham common law trusts, but to actively generate remunerative business for the Defendants in helping customers set up and run such trusts. And as the Government's brief established, the Defendants have in fact previously generated fees for themselves in exchange for providing just such assistance to their customers. The Art of Passing the Buck thus exists to support the Defendants' business practices.

Accordingly, The Art of Passing the Buck contains the sort of commercial speech that federal courts have enjoined in the context of granting Sections 7402 and 7408 motions against promoters of tax schemes. (Motion at 23-25, citing *United States v. Schiff*, 379 F.3d 621, 626-27 (9th Cir. 2004)(defendant's book detailing basis for tax evasion scheme could be enjoined as fraudulent commercial speech, even though it was not purely advertising in content); *United States v. Bell*, 414 F.3d 474, 483-83 (3rd Cir. 2005)). As in the *Schiff* case, The Art of Passing the Buck is an "integral part of [the Defendants'] whole program," the ultimate intent of which is to persuade customers to hire the Defendants to assist in the formation and operation of common law trusts. *Schiff*, 379 F.3d at 628.

The Government acknowledges that the Court should take care in crafting the language of the preliminary injunction it requests in this action so that the order does not infringe any legitimate First Amendment protections to which the non-commercial speech elements of The Art of Passing the Buck are entitled (and to that end, the Government will be filing with the Court an amended proposed injunction order designed to accomplish that careful balancing). But because the overall thrust of these materials is commercial in nature, while unquestionably containing commercial

speech intended to aid the Defendants' promotional activities, it is appropriate and warranted that this Court include relief relating to The Art of Passing the Buck in any preliminary injunctive relief granted.

**IV.     The Government's Motion is Not Barred by the Doctrine of Res Judicata.**

The Defendants have also asserted that a prior summons enforcement proceeding arising under Sections 7602 and 7604(a) of the Internal Revenue Code and brought in this jurisdiction - *United States v. Georger McCalip*, No. CV-08-04786-CAS-FFM, C.D. Cal. - bars this suit on the basis of *res judicata*. But that doctrine has no application to the present circumstances.

As stated by the Ninth Circuit in *The Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992), under the doctrine of *res judicata* "[a] final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action." The doctrine in turn incorporates both the concept of collateral estoppel, or issue preclusion (the effect of a judgment in foreclosing the relitigation of matters that were previously litigated and decided), as well as claim preclusion (the barring of the assertion of causes of action or bases for recovery that could have been asserted in the prior action). *Fund for Animals*, 962 F.2d at 1398 (discussing claim preclusion); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)(discussing issue preclusion). For purposes of analyzing claim preclusion, causes of action are not deemed to be the same unless (among other factors) the demands for relief are the same and the theory of recovery is the same. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).

Here, it is readily evident that the claim asserted in the *McCalip* case is wholly different from that presented in this action. *McCalip*, which was initiated in July of

2008 and resolved in the Government's favor by the end of September of that year, was merely an IRS summons enforcement matter against the Kenzington Fund - the sham trust organized by Defendants for their personal benefit and which is addressed in the complaint as well as the underlying preliminary injunction motion. The sole claim adjudicated in *McCalip* was the propriety of the IRS summonses, and the primary relief sought in that case was the enforcement of those summonses against the Defendants' trust entity. Other than the fact that some of the same counsel for the Government appeared in that case, and that the Defendants were indirectly involved in the action, the resolution of the *McCalip* case (in the Government's favor) did not involve determination of any issues relating to the Defendants' greater liability for violations of the Internal Revenue Code. Indeed - the IRS issued the summonses in order to investigate the extent to which the Defendants were, or were not, violating the tax laws.

Accordingly, the doctrine of *res judicata* cannot be invoked herein to preclude this action. *See, e.g., United States v. Powell*, No. 01-16162, 2002 WL 460397, at *1 (9th Cir. Feb. 22, 2002)(voluntary dismissal of summons enforcement proceeding against defendant did not preclude subsequent action to reduce to judgment tax assessment against same defendant). Otherwise, the Government would be obligated in every summons enforcement proceeding to also assert, and be prepared to fully adjudicate, the very matters under investigation for which the summons was issued - the essence of putting the cart before the horse.

Accordingly, for the reasons stated herein as well as in the underlying motion, the Government reiterates its request that this Court enter a preliminary injunction against the Defendants.

October 25, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

DARWIN THOMAS
Ca. Bar No. 80745
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2740
Facsimile:   (213) 894-0115
Email: darwin.thomas@usdoj.gov


/s/ Brian H. Corcoran
BRIAN H. CORCORAN
Member, D.C. Bar, No. 456976
Admitted *Pro Hac Vice*
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Fax: (202) 514-6770
Brian.H.Corcoran@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 25, 2010, I served the foregoing *United States' Reply in Support of Motion for Preliminary Injunction and Other Relief*, and all related papers, by federal express mail service upon the following:

Gwenn H. Wycoff
Frank C. Ozak
2801 Ocean Park Blvd., No. 296
Santa Monica, California 90405

Counsel *Pro Se*

/s/ Brian H. Corcoran
BRIAN H. CORCORAN