UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:10-cv-05856-JHN-PLAx |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION [10]** |
| vs. | ) | |
| | ) | |
| GWENN WYCOFF and FRANK OZAK, | ) | Judge: Jacqueline H. Nguyen |
| | ) | |
| Defendants. | ) | |
| | ) | |

The matter before the Court is Plaintiff's Motion for Preliminary Injunction (docket no. 10) filed on October 8, 2010.[1]  The Court previously deemed the matter appropriate for decision without oral argument and took the matter under submission. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The Court has considered the briefs filed in connection with the Motion, and for the reasons stated herein, the Court GRANTS the Motion for Preliminary Injunction.

**I.**

**BACKGROUND**

This action by the United States of America ("Plaintiff" or "Government") has been requested by the Chief Counsel of the Internal Revenue Service ("IRS"), a delegate of the Secretary of the Treasury, and commenced at the direction of a

---

[1] Despite Defendants' assertions to the contrary, this motion was timely filed 31 days from the selected hearing date of November 8, 2010.  *See* Local Rule 6-1.

delegate of the Attorney General, pursuant to the provisions of 26 U.S.C. §§ 7402 and 7408.  The Government alleges that Defendants Gwenn Wycoff and Frank Ozak (collectively "Defendants") are involved in the promotion, creation, and operation of abusive trusts.  On August 6, 2010, Plaintiff filed a Complaint against Defendants alleging that Defendants jointly advise individuals and business operators about the benefits of establishing abusive "common-law" trusts, which they falsely claim will allow their customers to avoid the payment of federal income taxes.  (Compl. ¶ 5.)  Plaintiff describes the trusts as follows:

> The trusts [Defendants] help create (and also, in many cases, directly assist in the management and operation of) purport to hold an individual's personal as well as business assets.  Through this, the Defendants assert, the trust, rather than the taxpayer, "owns" or comes to "own" the assets or business interests.  The trusts then "manage" these assets for the customers, paying taxpayer expenses and providing them money when needed, as well as investing some monies placed in the trusts.  Wycoff and Ozak frequently act as paid trustees for the trusts they urge and help their customers to create, and thus provide more than mere up-front assistance in creation of the trusts.

(*Id.*)  Plaintiff seeks an injunction under 26 U.S.C. § 7408, which allows courts to enjoin persons who promote the adoption of abusive tax schemes under §§ 6700 and/or 6701, and under § 7402, which allows courts to issue an injunction to enforce the internal revenue laws.

## II.

## DISCUSSION

**A.  Res Judicata**

Defendants assert that the doctrine of res judicata bars this action as a result of the U.S. Attorney's Office's action against their colleague, George E. McCalip, in *United States of America v. George E. McCalip*, Case No. 2:08-cv-04786-CAS-FFMx ("*McCalip*").  "Res judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010)

(quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). *McCalip* was simply a petition by the IRS to Enforce IRS's Summons filed against Respondent George E. McCalip in his capacity as Trustee of Defendants' Kenzington Fund Irrevocable Trust. The sole issue before the Court in *McCalip* was whether the IRS's summons was appropriate—a matter which presumably led to the information necessary for the U.S. Attorney's Office to initiate the present litigation. The substantive issues of fraud were not, and could not have been, raised in that matter. Accordingly, Plaintiff's action is not barred by res judicata.

**B. Standard for Preliminary Injunction**

Plaintiff seeks a preliminary injunction pursuant to 26 U.S.C. § 7408. "Courts use a specialized standard when reviewing preliminary injunctions issued pursuant to 26 U.S.C. § 7408." *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004). An injunction may issue if (1) the person engaged in conduct subject to penalty under 26 U.S.C. § 6700 or § 6701, among other sections; and (2) the injunction is appropriate "to prevent recurrence of such conduct." 26 U.S.C. § 7408(b).

> Section 6700 imposes a monetary penalty on any person who organizes, promotes or sells "a partnership or other entity," "an investment plan or arrangement," or "any other plan or arrangement," and in connection therewith makes or furnishes a statement about the tax consequences of participating which he knows, or has reason to know, is false or fraudulent.

*U.S. v. Cohen*, 222 F.R.D. 652, 653 (W.D. Wash. 2004); *see* 26 U.S.C. § 6700(a).

> Section 6701 imposes penalties on any person who (1) aids, assists, or advises with respect to the preparation or presentation of any portion of a return; (2) knowing or having reason to believe that such assistance or advice will be used in connection with any material matter, and (3) who knows that such portion of the return, if used, would result in an understatement of another person's tax liability.

*Cohen*, 222 F.R.D. at 653; *see* 26 U.S.C. § 6701(a).

In determining the likelihood of recurrence of the conduct, courts consider factors including the following:

3

(1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

*United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1105 (9th Cir. 2000).

Plaintiff also seeks an injunction pursuant to 26 U.S.C. § 7402(a), which gives "district courts 'a broad range of powers to compel compliance with the tax laws,' even in instances 'when such interference does not violate any particular tax statute.'" *Cohen*, 222 F.R.D. at 653 (quoting *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir.1984)). Section 7402(a) provides that district courts may issue injunctions broadly "as may be necessary or appropriate for the enforcement of the internal revenue laws." § 7402(a).

The Government must prove each element required for an injunction by a preponderance of the evidence. *Estate Pres. Servs.*, 202 F.3d at 1098.

## C. Findings of Fact

Based on the evidence submitted, the Court finds as follows:

1. Ozak acts as general manager of the Kenzington Fund, an organization through which the Defendants have in the past promoted their activities. Wycoff acts as trust administrator and/or protector for several of the trusts described herein, besides helping to establish them. Both Defendants are heavily involved in the promotion, creation, and operation of the trusts at issue in this lawsuit.

2. Defendants jointly advise individuals and business operators about the benefits of establishing "common-law" trusts, which they claim will allow their customers to avoid the payment of federal income taxes. The trusts they help create (and also, in many cases, directly assist in the management and operation of) purport to hold an individual's personal as well as business assets. Through this, the Defendants assert, the trust, rather than the taxpayer, "owns" or comes to "own" the assets or business interests. The trusts then "manage" these assets for the customers, paying taxpayer expenses and providing them money when needed, as well as investing some monies placed in the trusts. (Lee Decl. ¶¶ 5–7.)

3. Through management of the taxpayers' assets and funds, the trusts purport to distribute their income to certain named beneficiaries, to make it appear as if the trusts have no resulting tax liability. Such beneficiaries, however,

4

prove to be illusory—off-shore entities with falsified addresses that are merely intended to create the appearance of legality. (Lee Decl. ¶ 11, Cheung Decl. ¶ 22.)

4.   Ozak and Wycoff represent to customers that the creation of such trusts allows individuals to "legally" avoid federal income taxation, because the trusts (rather than the taxpayers) own and control the trust's *res*. The Defendants' customers either do not file income tax returns, or file returns that suggest they have little or no income. The trust tax returns similarly show distribution of almost all trust income to other entities and thereby claim no income as well. (Cheung Decl. ¶ 7; Chynoweth Decl. ¶ 14.)

*The Kenzington Fund*

5.   The Defendants personally created a common-law trust for themselves—the "Kenzington Fund," an entity that was itself a common-law trust, as well as an organization through which they initially promoted their ideas. Wycoff and Ozak established the Kenzington Fund trust in 1997. Wycoff is currently the administrator and secretary of the Kenzington Fund, while Ozak is the general manager. A third party and close associate of the Defendants, George McCalip, acts as a trustee of the Kenzington Fund. (Lee Decl. ¶¶ 9–10.)

6.   Wycoff and Ozak initially promoted their tax scheme via the Kenzington Fund's website, "www.kenzington.com." In 2004, however, after they became aware of the IRS's investigation into their activities, they shut that website down and began utilizing another website, "www.passingbucks.com" to promote their advice and products. The registered owner of this new website is the Kenzington Fund Trustee, George McCalip. (Lee Decl. ¶ 13.)

7.   Since its creation, the Kenzington Fund has routinely failed to file required federal tax forms and pay taxes due. It last filed an income tax return in 2003, which the IRS audited. That return reported income of $95,246.00, but an offsetting distribution deduction of $95,246.00, thus allowing the Kenzington Fund to report no taxable income. The IRS determined through its audit that the Kenzington Fund had never made any such distributions. Based in part on that determination, the IRS made a jeopardy assessment against the Kenzington Fund of $56,734. As of April 30, 2010, the Kenzington Fund owes unpaid taxes, plus penalties and interest, in the amount of $105,142. (Lee Decl. ¶ 12.)

*Dissemination of Wycoff and Ozak's Tax-Avoidance Scheme*

8.   Since establishment of the Kenzington Fund, and now through the "passingbucks.com" website, Wycoff and Ozak have promoted the creation of common-law trusts as a means of evading income taxes. On such websites, they have posted articles specifically advocating that individuals create common-law irrevocable trusts for these reasons. Wycoff and Ozak also offer for sale numerous printed materials that promote their trust-creation scheme. For example, the Kenzington website sold newsletters, reports, and common-law trust books. Posted on that website was an article entitled "Give It Away and Get It," written by Wycoff, as well as another article entitled "Own Nothing, Control Everything." (Lee Decl. ¶ 15; Ex. 5 to Lee Decl.)

*"The Art of Passing the Buck"*

9.    In 2008, the Defendants published and began to sell a two-volume work entitled *The Art of Passing the Buck*, which contains false statements about the internal revenue laws.  Wycoff and Ozak advise customers to purchase the books to obtain more information about the trust scheme they advocate.  Wycoff and Ozak offer these books for sale via the "passingbucks.com" website as well as through seminars and discussions at which they speak; the books have also been promoted on a radio show in 2008 by their associate Mr. McCalip.  The first volume costs $39.95, with the second (which contains more detailed instructions for how to establish and make use of the trusts advocated by the Defendants) going up in price to $500.  (Lee Decl. ¶ 16.)

10.   The purported "author" of *The Art of Passing the Buck* volumes is Charles Arthur, but Mr. Arthur does not exist. The volumes were in fact written under that pseudonym by a "consortium" of individuals, including Wycoff, Ozak, and McCalip.  Ozak himself is the general manager of Charles Arthur Enterprises, the volumes' publisher.  (Lee Decl. ¶ 17.)

11.   These two related volumes (and, in particular, the more costly second volume) provide a road map for the creation of the trusts through which Wycoff and Ozak's customers understate their tax liability.  They discuss at length the purported tax benefits of common-law trusts, and contain numerous instructions for setting them up.  Although neither volume specifically mentions Wycoff or Ozak by name, both contain in the end pages contact information for "Charles Arthur Enterprises," along with an invitation to contact that entity to obtain consulting assistance in the creation and management of a trust.  (Lee Decl. ¶ 18; Ex. 6 to Lee Decl.)

12.   Wycoff and Ozak also spread false information about the IRS in books they promote.  For example, they claim in *The Art of Passing the Buck* that the IRS "is a foreign organization, based in Puerto Rico, and not part of the U.S. Government."  The book falsely states that the IRS has no authority to collect money and that federal agents have no jurisdiction over common-law trusts.  (Mot. Prelim. Inj. Ex. B, Vol. II at 204–05.)

13.   The books further highlight several factors the IRS considers in determining whether a trust is a sham, but ignore a fundamental requirement for a valid irrevocable trust: the true relinquishing of control over the assets placed into the trust by the taxpayer.  In this respect, the works fail to mention that a transfer to an irrevocable trust is invalid for tax purposes unless such control is relinquished, and instead advocates that customers take cosmetic steps to create the appearance of a relinquishing of control.  Thus, the books instruct customers to change the recording deed for their homes, and to pay the mortgage through the trust, even though the taxpayers continue to occupy the homes as their beneficial owners.  (*Id*. at 159–205.)

14.   Numerous statements contained within both volumes of *The Art of Passing the Buck* relating to common-law trusts constitute false, intentionally misleading, and/or deceptive commercial speech.  These statements all propose a commercial transaction: that taxpayers not merely set up common-law trusts,

6

but purchase, at considerable cost, *The Art of Passing the Buck* to do so—and then directly engage Wycoff and/or Ozak once the trust has been created. As such, the intent of this speech about the nonexistent tax benefits of common-law trusts is, at bottom, to benefit both Defendants financially—not to "spread the word" about the Defendants' political views.[2]

### *The Anna Correy Family Trust*[3]

15.    In 2003, Dean "Rex" Wilson of Los Angeles, California was persuaded by the Defendants to create a trust after he saw an advertisement published by Wycoff and Ozak in a medical journal stating that it was possible for trust grantors to "own nothing, control everything." He accordingly created the "Anna Correy Family Trust" (as well as additional related trusts), transferring all of his personal business activity to that trust. (Wilson Decl. ¶ 3; Cheung Decl. ¶ 5.)

16.    Wycoff and Ozak subsequently prepared the trust documents, created trust bank accounts, and did other work to set up several trusts on behalf of Mr. Wilson. After 2003, Mr. Wilson ceased filing a personal Form 1040 income tax return, and thus did not report his own salary or income derived from his business activities.   (Wilson Decl. ¶ 3; Cheung Decl. ¶ 6.)

17.    Wycoff and Ozak had exclusive access to the trusts' bank accounts and used the trust's income to pay trust "expenses" as well as their fees. Those

---

[2] Defendants' main objection to the present motion is that the information they publish is protected by the First Amendment. For this reason, the Preliminary Injunction that follows shall only forbid Defendants' illegal speech. In any event,

Where it has been determined that . . . statements regarding [tax advice], which constitute commercial speech, are misleading in the context contemplated by Congress in enacting [sections 6700 and 7408], and the injunction prohibiting such statements is adequately tailored and construed to enjoin only such commercial speech which has been shown to be both misleading and likely to promote illegal activity, such representations are not protected by the First Amendment.

*Estate Pres. Servs.*, 202 F.3d at 1106 (quoting *United States v. Buttorff*, 761 F.2d 1056, 1066 (5th Cir. 1985)).

[3] In addition to the trusts discussed in this order, in 2008, the IRS examined the 2005 and 2006 tax returns filed by the "Sterling Paladin Family Trust." Those returns are characterized by many of the same suspicious features reflected in the trusts set up by Wycoff and Ozak for Mr. Wilson. (Cheung Decl. ¶¶ 18–26.)

expenses included the payment of bills relating to Mr. Wilson's business. At the same time, Mr. Wilson submitted payments he received from his patients directly to the trust. The trust thereupon paid Mr. Wilson a monthly salary, and if he needed any additional money, he merely took out a "loan" from the trust. (Cheung Decl. ¶ 9; Wilson Decl. ¶¶ 7–8.)

18. After audit and examination of the Anna Correy Family Trust tax returns, the IRS determined that the trusts should be disregarded for tax purposes—both because the trusts were sham arrangements with no economic substance and because they were grantor trusts whose income was taxable to Mr. Wilson individually. As a result, Mr. Wilson's income was adjusted to be that of the gross income of the business purportedly operated by the trust, and the IRS recalculated Mr. Wilson's actual tax liability. (Cheung Decl. ¶ 16.)

19. The examination of Mr. Wilson's income taxes and the trusts opened on his behalf was completed in the summer of 2009. The IRS determined that Mr. Wilson owed $48,834 in unpaid taxes to the Government. Mr. Wilson agreed to the changes to his tax returns. (Cheung Decl. ¶ 17; Wilson Decl. ¶¶ 14–15.)

### *The Solomon Nabres Family Trust*

20. In 1998, Wycoff and Ozak helped Rita and George Serban of Bakersfield, California set up three related trusts: the Solomon Nabres Family Trust, the Solomon Family Trust, and the Hagar Family Trust. Rita Serban was established as the three trusts' executive secretary, and George Serban their general manager. (Chynoweth ¶¶ 3–4; Serban Decl. ¶¶ 7–8.)

21. In 2005, the IRS examined the Serbans' income tax returns and subsequently learned about the trusts they had established. Through the examination and audit, the IRS discovered that despite the purported separation between the trusts and the Serbans, in fact George Serban had complete control at all times over the activities of the trusts, including but not limited to check-signing authority, management of the trusts' operations, and direction of the disposition of trust income, including investment decisions. In addition, the IRS investigation revealed that entities designated by the trusts as recipients of income distribution frequently had off-shore addresses that, upon checking, did not exist for that entity, or multiple post office box designations that could not be confirmed by the U.S. Postal Service. The IRS on audit determined that all three Serban trusts were shams. George and Rita Serban subsequently settled the matter, agreeing to tax deficiencies and penalties that totaled in excess of $900,000. (Chynoweth Decl. ¶¶ 10–11, 14–15.)

### *Obstructive Conduct by Defendants*

22. The indenture agreements governing the trusts that Wycoff and Ozak create all require trustees and trust managers to keep private their trust's dealings unless permitted to disclose information by the board of trustees. But they have also counseled their customers (in *The Art of Passing the Buck* and elsewhere) to incorporate an "Oath of Privacy" in the trusts they create.

8

They falsely tell their customers that this oath allows persons with knowledge of trust business who have taken the oath to refuse to provide requested information about the trusts to federal agents and other Government personnel. (Lee Decl. ¶ 21; Ex. B, Vol. II, p. 203.)

23. The Defendants include penalties of up to $100,000 for any trustees, trust officers, or managers who violate this "Oath of Privacy." Because Wycoff and Ozak's customers are usually designated as trustees or trust managers (so that they can continue to exercise control over the trusts), such penalties apply to them—and are intended to keep them from disclosing information about the trusts if they are contacted separately by the Government. (*Id.*)

24. The Defendants' publications further inform readers that only trustees should "deal with agency officials," and that they should refer all correspondence to the trustees. This allows Wycoff and Ozak (who are typically named as the trustees of their customers' trusts) to interfere with IRS investigations and thereby attempt to shield their customers. (*Id.* at 204.)

### *Harm to the Government and the Public*

25. Wycoff's and Ozak's conduct has deprived the Government of substantial tax revenue. In the past six years, the IRS has either directly audited the tax returns of trusts created by, or with the assistance of, Ozak and Wycoff (including their own Kenzington Fund trust return), or has reviewed the returns of such trusts in connection with an individual taxpayer's audit. In four such instances, the IRS has either directly determined that the trust at issue was a sham (where the grantor's identity was known) and consequently ruled that the underlying taxpayer owed unpaid income taxes, or (because the taxpayer accepted the changes before the IRS was required to make an express determination about the trusts in question) simply settled the matter on terms requiring the taxpayer to satisfy substantial amounts in unpaid taxes and penalties. (Lee Decl. ¶ 23.)

26. As of April 30, 2010, the total amount of tax deficiencies assessed in these four cases involving Wycoff and Ozak's promotion of common-law trusts is $1,192,212. (*Id.* ¶¶ 23–24.)

27. Besides harm to the Government, the taxpayers who have been "assisted" by the Defendants are themselves potentially subject to large penalties, for erroneous claims on their returns which can amount to as much as 20 percent of the excessive refund claimed. *See* 26 U.S.C. § 6676.

### *The Defendants' Statutory Violations*

28. Wycoff and Ozak promote, assist in, and preside over the creation of common-law trusts as a means of diminishing the actual taxes owed by their customers, and/or as a mechanism for shielding their customers' actual income from the Government. They provide their customers with a road map for creating the trust, give advice on how they should be utilized, and also assist in the management of the trusts in many cases by acting as trustees.

9

29. As a product of their promotion of the creation of such sham trusts, the Defendants also arrange for the preparation of fiduciary income tax returns for their customers' trusts that reflect significant understatements of their customers' actual income tax owed, by falsely claiming that all trust income has been distributed.  Many of their customers cease filing individual returns entirely, based on the belief that they no longer need to do so given the existence of the trust.

30. The Defendants not only propagate false and fraudulent information about the tax laws through direct contact with customers, and through the direct assistance they provide customers in setting up, and then operating, the common-law trusts they promote, but also more generally through the sale of their *The Art of Passing the Buck* books and other publications for sale and/or published on the Internet.  These publications contain false and fraudulent statements about the federal income tax benefits of establishing common-law trusts.  The publications do not merely contain expressive political speech, but instead contain commercial speech, the purpose of which is to propose commercial transactions that will benefit the Defendants directly as well as their customers.  Wycoff and Ozak (through Charles Arthur Enterprises) self-publish and sell *The Art of Passing the Buck* for the purpose of advertising to potential customers their expertise in creating and managing common-law trusts.

31. In engaging in the above-referenced conduct, Wycoff and Ozak know, or have reason to know, that the advice they provide their customers about the tax advantages of the trusts they create is false and fraudulent.  They also know, or have reason to know, that the promotion activities they engage in result in the material understatement of their customers' tax liability.

**D.  Conclusions of Law**

1. Accordingly, Wycoff and Ozak have engaged in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6701.

2. A preliminary injunction is necessary to prevent recurrence of the Defendants' conduct, because of the gravity of the harm to the Government in the form of lost tax revenue, the Defendants' extensive participation in promoting common-law trusts on a recurrent basis, and the fact that the Defendants continue to maintain an active website and offer their books and lecture services to the public.

3. The Defendants therefore are subject to an injunction under 26 U.S.C. § 7408.

4. 26 U.S.C. § 7402(a) authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

5. The Defendants have substantially interfered with the enforcement of the

Case 2:10-cv-05856-JHN-PLA   Document 23   Filed 03/11/11   Page 11 of 13   Page ID #:472

internal revenue laws by promoting the creation of sham trusts, as well as their more broad propagation of false information about the federal tax laws through the publication and sale of their books.

6.   As a result of the Defendants' misconduct, their customers have failed to file proper tax returns and consistently understated their actual tax liability.

7.   The Defendants' conduct results in irreparable harm to the United States and to the public.  There is no adequate remedy at law for their misconduct.

8.   The Defendants' conduct interferes with the proper administration of the Internal Revenue Code because it results in filings with the IRS that hinder the IRS's ability to determine the correct tax liabilities of the Defendants' customers.

9.   Unless enjoined by this Court, the Defendants will continue to promote and administer their tax-fraud scheme.

10.   Under 26 U.S.C. § 7402(a), the United States is entitled to injunctive relief to prevent the recurrence of this misconduct.

## III.

## PRELIMINARY INJUNCTION

Based on the foregoing findings of fact and conclusions of law, the Court enters the following preliminary injunction against Wycoff and Ozak:

A.   Pursuant to 26 U.S.C. §§ 7402 and 7408, the Defendants and their representatives, agents, servants, employees, and anyone in active concert or participation with them are preliminarily enjoined from directly or indirectly:

(1)   Organizing or selling tax shelters, plans, or any other arrangements that advise or assist taxpayers to attempt to evade the assessment or collection of such taxpayers' correct federal tax, including but not limited to selling or providing for free to customers any services or assistance whatsoever involving the creation, establishment, or maintenance of common-law trusts;

(2)   Engaging in any other activity subject to penalty under 26 U.S.C. § 6700, i.e., organizing or selling a plan or arrangement and making a statement regarding the excludability of income or securing of any other tax benefit, by participating in the plan that they know or have reason to know is false or fraudulent as to any material matter, including but not limited to the following false statements: (a) that "common-law" trusts are beyond the Government's power to tax because they arise as a matter of contract, (b) that the creator of a common-law trust can transfer his personal or business assets or proceeds into the trust and continue to exercise day-to-day control over the asset or proceeds in question without incurring any federal income tax liability from that activity, (c) that the business activities of a trust creator's business assets transferred into a common-law

11

trust are not taxable to the trust's creator, and/or (d) that the creator of a common-law trust can, through creation of the trust and transfer of personal or business assets or proceeds into the trust, reduce or eliminate the creator's individual federal income tax liability;

(3)   Engaging in any activity subject to penalty under 26 U.S.C. § 6701, i.e., aiding or assisting in, procuring, or advising with respect to the preparation or presentation of a federal tax return, refund claim, or other document, knowing or having a reason to believe that it will be used in connection with any material matter arising under the internal revenue laws, and knowing that if so used it would result in an understatement of another person's tax liability; and

(4)   Directly or indirectly organizing, promoting, marketing, or selling any plan or arrangement that advises or encourages taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the use and/or creation of common-law trusts as a means of eliminating if not greatly reducing their income tax liabilities;

B.   Pursuant to 26 U.S.C. §§ 7402 and 7408, the Defendants are preliminarily enjoined from using or creating, as well as promoting the use and creation of, any trusts for themselves or others that have the effect of violating or are employed to violate the law in any means or fashion set forth in Paragraph A above;

C.   Pursuant to 26 U.S.C. §§ 7402 and 7408, the Defendants are preliminarily enjoined from acting in any advisory or participatory capacity in any way for any common-law trusts created by any of their customers, themselves, or any other parties in the past ten years and in which they have assisted in the creation or management in any way during that time period;

D.   Pursuant to 26 U.S.C. §§ 7402 and 7408, the Defendants are preliminarily enjoined from filing, providing forms for, assisting in the preparation of, or otherwise aiding and abetting the filing of Forms 1040 or 1041 for themselves or others relating in any way to any common-law trusts, including the notarization or signing of certificates of service or similar documents in connection with such tax returns;

E.   Within ten days of entry of this Order, the Defendants shall post on the "www.passingbucks.com" website a copy of this Order, and shall certify to this Court in writing that they have done so within 30 days of the date of entry of this Order.  This requirement shall also apply to any websites the Defendants shall obtain, initiate, or begin the operation of while this Order remains in effect;

F.   Pursuant to 26 U.S.C. § 7402, the Defendants are hereby required to contact by mail (and also by e-mail, if an address is known) all persons who have purchased from them any products, services, advice, or publications associated with the false or fraudulent tax scheme described in Plaintiff's complaint in the past five years and provide those persons with a copy of the preliminary injunction against them, and shall certify to this Court in writing that they have

done so within 30 days of the date of entry of this Order; and

G.   Pursuant to 26 U.S.C. § 7402, the Defendants shall provide to the United States a list of all persons who have purchased their products, services, advice, or publications in the past five years, and shall certify to this Court in writing that they have done so within 30 days of the date of entry of this Order.

**IT IS SO ORDERED**.

Dated: March 11, 2011

_____

Honorable Jacqueline H. Nguyen
United States District Court

13