ANDRÉ BIROTTE JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
DARWIN THOMAS
Ca. Bar No. 80745
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2740
Facsimile:   (213) 894-0115
Email: darwin.thomas@usdoj.gov

BRIAN H. CORCORAN
Member, DC Bar, No. 456976
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Facsimile: (202) 514-6770
E-mail: brian.h.corcoran@usdoj.gov

Attorneys for Plaintiff, United States

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. CV10-5856-JHN (PLAx) |
| GWENN WYCOFF, and | ) **OPPOSITION TO MOTION TO ALTER PRELIMINARY INJUNCTION** |
| FRANK OZAK, | ) |
| Defendants. | ) |

Date: May 9, 2011
Time: 2 p.m.
Place: Ctrm. 790
255 East Temple St.
Los Angeles, CA 90012

The United States of America ("United States"), in opposition to the motion of Defendants Gwenn Wycoff and Frank Ozak pursuant to Fed. R. Civ. P. 59(e) to alter this Court's March 11, 2011 Order of Preliminary Injunction (Docket No. 23), respectfully states as follows:

The Defendants' motion to alter two paragraphs of the Preliminary Injunction Order reflects merely the Defendants' desire to relitigate matters they already lost. The Government's preliminary injunction motion, filed six months ago, set forth in detail the legal and factual bases for its requested relief, and also provided the Defendants a copy of the proposed injunction as well, thus putting them on ample notice of the scope of relief sought in this action.   (*See* Draft Order (Docket 10-2), attached to United States' Motion for a Preliminary Injunction, dated October 8, 2010 (Docket No. 10-1)).  The time for the Defendants to challenge the proper scope of that relief was *before* the Order was entered, not after - and there have been no developments of fact or law in the ensuing month since the Order was entered that alter the rationale for its entry.  It is now too late for the Defendants to make arguments they could easily have raised  earlier.

Even if the Court entertains the substance of the Defendants' objections to the two challenged paragraphs of the Preliminary Injunction Order, there is no basis for altering the preliminary injunction under the applicable grounds of Rule 59(e). Paragraph G, demanding that the Defendants produce a customer list (including purchasers of The Art of Passing the Buck - the Defendants' recently-published work containing numerous false statements about the tax benefits of sham "common law" trusts) does not impinge upon those customers' First Amendment rights, because their acts in retaining the Defendants to assist them in forming sham trusts, or purchasing products from them, are more properly characterized as commercial conduct.

Paragraph C, which enjoins the Defendants from continuing to act "in any advisory or participatory capacity" in connection with the sham trusts they have helped create or manage, is also unobjectionable and fully consistent with the law enforcement goals enshrined in the Preliminary Injunction Order. The Defendants failed to rebut the Government's showing in obtaining the Preliminary Injunction Order that the Defendants' work in connection with sham trusts had a fraudulent tax evasive purpose, and therefore the Defendants cannot now object that they should be allowed to continue to engage in such illegal conduct merely because they perceive the scope of that provision of the Order to be unfair to them, economically or otherwise.

## ARGUMENT[1/]

Under Rule 59(e), a party may move to alter or amend a "judgment" (which, as defined by Rule 54(a), includes a preliminary injunction order, as such an order is subject to interlocutory appeal) by establishing one or more of four grounds: (1) to correct a clear error of law, (2) to take into account newly discovered evidence, (3) to prevent manifest injustice, or (4) to address an intervening change in controlling law. *Chemical Producers and Distributors Assoc. v. Helliker*, No. CV 02-9781, 2004 WL 1490376, at *1 (C.D. Cal. June 28, 2004)(denying Rule 59(e) motion), *citing Turner v. Burlington Northern Sante Fe Railroad Co.,* 338 F.3d 1058, 1063 (9th Cir. 2003). The 9th Circuit has stated that relief under Rule 59(e) is an "extraordinary remedy, to

1. The Defendants' Motion should also be denied because the Defendants have failed to comport with Local Rule 7-3, by conferring with counsel for the Government before the filing of this motion, and then certifying to that fact in their motion papers. The fact that the Defendants are *pro se* should not mitigate this requirement; the Defendants have spoken to the United States' counsel on the phone several times about the lawsuit or discovery matters, and therefore could easily have discussed the requested relief before filing a motion.

be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Thus, a party making a Rule 59(e) motion cannot simply repeat previous arguments that were rejected in granting the order the party seeks to modify (*United States v. Westlands Water Dist.*, 134 F. Supp.2d 1111, 1131 (E.D. Cal. 2001)), or make arguments or present evidence that reasonably could have been asserted in earlier proceedings (*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

Wycoff and Ozak have admitted that their Rule 59(e) motion is based solely on the "clear error" or "manifest injustice" grounds. (Motion to Alter at 2). "Clear error" means a mistake of law or fact. 12 James Wm. Moore, *et al., Moore's Federal Practice* ¶ 59.30[5][a][iv] (3d ed. 2010). Clear error cannot be based simply on disagreement with interpretation of "the nuances of the law and the facts presented," as differences in interpreting such matters are "a normal byproduct of legal advocacy." *United States v. Carolina Cas. Ins. Co.*, No. 08cv1673, 2011 WL 1121276, at *3 (S.D. Cal. Mar. 21, 2011)(denying Rule 59(e) motion). "Manifest injustice" is often treated as a catch-all basis for relief invoked when connected with another more substantive ground, such as clear error. *See, e.g., Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc.,* 169 F.R.D. 680, 684-85 (M.D. Fla. 1996)(Eleventh Circuit links manifest injustice with need to correct clear legal error). However, there can be no "manifest injustice" where the moving party merely dislikes the challenged judgment (and thus is raising nothing new or extraordinary in challenging it). *Black v. Astrue*, 584 F. Supp.2d 1278, 1288 (C.D. Cal. 2008)(no "manifest injustice" under Rule 59(e) where party "simply prefers a different outcome").

**1.    The First Amendment Does not Shield the Production of the Defendants' Customer List and/or Purchasers of its Publications**

The bulk of the Defendants' Rule 59(e) motion challenges Paragraph G of the Preliminary Injunction Order, which reads as follows:

> Pursuant to 26 U.S.C. 7402, the Defendants shall provide to the United States a list of all persons who have purchased their products, services, advice, or publications in the past five years, and shall certify to this Court in writing that they have done so within 30 days of the date of entry of this Order.

Order at 13, Paragraph G.

The Government routinely requests the production of a customer list in the preliminary injunction orders it seeks against the promoters of tax schemes under Sections 7402, 7407, and/or 7408 of the Internal Revenue Code - and federal courts routinely grant such requests. *See, e.g., United States v. Benson*, 561 F.3d 718, 727 (7th Cir. 2009)("[w]e note that this is not the first time a promoter of false tax schemes has been required to divulge his customer list"), *citing United States v. Bell*, 414 F.3d 474, 485 (3d Cir. 2005); *United States v. Schulz*, 517 F.3d 606, 607-08 (2d Cir. 2008); *United States v. Kotmair*, Civ. No. WMN-05-1297, 2006 WL 4846388 at *7-8 (D. Md. Nov. 29, 2006), *aff'd*, 234 Fed. Appx. 65, 65-66 (4th Cir.2007); *United States v. Harkins*, 355 F. Supp.2d 1175, 1182 (D. Or. 2004); *United States v. Stephenson*, 313 F. Supp.2d 1054, 1061 (W.D. Wash. 2004). The authority of district courts to order such conduct flows directly from Section 7402, which expressly permits a district court to "issue ... writs and orders of injunction ... and such other orders ... as may be necessary or appropriate for the enforcement of the internal revenue laws." I.R.C. § 7402(a); *compare Schulz*, 517 F.3d at 607-608(upholding under Section 7408 injunctive provision requiring promoters to provide names of individuals who received their materials).

Requiring the Defendants to produce a customer list (which in this case would also include the purchasers of Defendants' publications like The Art of Passing the Buck) is consistent with the relief embodied in the preliminary injunction issued by this Court. The Government's complaint (substantiated by its successful preliminary injunction motion) alleges the Defendants are not merely promoting the concept of sham trusts as a means of tax evasion, but are marketing directly to customers the Defendants' competence in setting up or running such trusts, and offering their services for a fee to that end. Customers (such as Frank and Rita Serban or Rex Wilson, whose experiences with the Defendants were recounted at length in the Government's preliminary injunction motion (*see, e.g.,* Preliminary Injunction Motion at 8-12)) ultimately discover not only that the Defendants' advice is wrong, but that relying on it results in unexpected tax liabilities. Such customers did not contact the Defendants simply because they agreed with the Defendants' views; they hired the Defendants to help them with specific tax and financial goals.

Accordingly, production of a customer list allows the Government to determine the degree to which taxpayers have erroneously relied on the Defendants' trust-creation and operation advice, thus permitting the United States to ascertain the scope of the Defendants' illegal conduct. Such information bears directly on the form of the permanent injunction the United States will ultimately request in this lawsuit. Possession of the list also allows the Government to confirm the Defendants' compliance with other provisions of the Order, such as Paragraph F (which obligates the Defendants to notify customers of the Preliminary Injunction Order). And obtaining a customer list will aid the United States' enforcement of the law, by permitting it to evaluate the extent to which Wycoff and Ozak's customers (many of whom the Government is likely unaware) are relying on the Defendants' false advice to evade their lawful federal income tax obligations. *See*, *e.g., Benson*, 561 F.3d at

727 (production of a tax defier/promoter's customer list "serve[s] the public interest . . . both to warn [customers] of the falsity and ineffectiveness of [defendant's] claims, and to enforce the income tax laws"); *Bell*, 414 F.3d at 485 (affirming the requirement of production of a customer list in part where "the government has a compelling interest . . . in determining whether [the Defendant's] customers filed fraudulent returns in violation of the Internal Revenue Code"), *citing First Nat'l Bank of Tulsa v. Dep't of Justice*, 865 F.2d 217, 220 (10th Cir. 1989).

The Defendants' challenge to Paragraph G fails the standards of Rule 59(e) in two respects. First, the Defendants' arguments are dilatory, repeating previously-advanced but rejected arguments. The Government's preliminary injunction motion addressed the authority of courts to enjoin parties from engaging in false commercial speech. (Motion for Preliminary Injunction at 23-25). In response, the Defendants filed a 25-page opposition (Defendants' Opposition to Preliminary Injunction Motion, dated October 18, 2010 (Docket No. 11)) in which they spent considerable time arguing their First Amendment-based objections. In addition to asserting that The Art of Passing the Buck was protected speech[2/], they also raised issues such as the protections the First Amendment affords "anonymous speech." (Opposition at 20). And they had already been provided with a copy of the proposed injunction order, which included a version of Paragraph G. Accordingly, the Defendants were well aware of the implications of the relief requested and had ample opportunity to raise

2. The United States, recognizing the First Amendment issues raised in this case, has been careful to distinguish between political speech by the Defendants, however false, and commercial speech which may be regulated by court order. To that end, the draft injunction order submitted by the United States did not ask that the Defendants be required to edit or cease sale or publication of The Art of Passing the Buck. The Court has also recognized this distinction. (*See* Preliminary Injunction Order at 7 n.2).

objections to the scope of that provision before the Court entered it.  They should not be allowed to employ Rule 59(e) to do so after the fact.

Second, the Defendants cannot demonstrate that Paragraph G as worded constitutes a clear error of law in light of the First Amendment rights of "readers of The Art of Passing the Buck." (Motion at 2).  As a threshold matter, the Defendants do not appear to object to disclosing the identities of Wycoff and Ozak's trust customers, separate from the specific purchasers of publications like The Art of Passing the Buck.  In fact, requiring the production of a general customer list (exclusive of the purchasers of The Art of Passing the Buck) does not run afoul of the First Amendment.  As noted in the Government's preliminary injunction moving papers, false or fraudulent "commercial speech"[3/] that deceives the public or is related to unlawful activity is not subject to absolute protection under the First Amendment. *See Bolger v. Youngs Drug Products Corp*., 463 U.S. 60 (1983); *United States v. Schiff*, 379 F.3d 621,  626 (9th Cir. 2004) (*citing Central Hudson Gas & Electric v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980)); *Bell*, 414 F.3d at 483.  The advice and assistance Wycoff and Ozak have provided - for a fee - to their customers about the establishment or operation of common law trusts is exactly the sort of false and deceptive commercial speech that can be subject to regulation by a court order, and therefore disclosing their customers to the Government is not only consistent with its compelling interest in enforcing the tax laws but does not infringe any relevant First Amendment rights.

---

3. When deciding if speech is commercial, courts take into account whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and/or (3) the speaker has an economic motivation for the speech. *Bolger v. Youngs Drug Products Corp*., 463 U.S. 60, 66-67 (1983).

But the purchasers of publications like The Art of Passing the Buck similarly should not be shielded from the Government on the basis of the First Amendment. [4] The Defendants' motion argues that "readers" of The Art of Passing the Buck are engaging in "anonymous speech" and therefore their right to do so is impinged by the production of a list identifying them to the Government. (Motion at 3-6). Even granting the Defendants' conclusory assertion that the purchase of The Art of Passing the Buck is an act of anonymous speech[5], the Defendants' argument ignores the context in which the purchase of such publications occurs.

Anonymous speech is generally subject to First Amendment protections. *Buckley v. American Constitutional Law Found.,* 525 U.S. 182, 200 (1999). Yet, as noted in *Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) - a case cited favorably by the Defendants - "[a]nonymous speech, like speech from identifiable sources, does not have absolute protection." *Sony Music Entertainment*, 326 F. Supp. 2d at 562 (First Amendment does not bar internet service provider's disclosure of defendants' identities); see *also* Motion to Alter at 6 ("[i]t is to be noted that the rights to anonymity of readers, like those of writers or publishers on the internet, are not absolute, but *qualified*")(emphasis in original). Rather, the

---

4. The Government will not make the produced list a matter of public record in this case, obviating any concerns about individual privacy.

5. Although the First Amendment protects the *act* of reading or otherwise receiving information and ideas (*see, e.g., King v. Federal Bureau of Prisons*, 415 F.3d 634 (7th Cir. 2005)), that does not mean that purchasers of a publication or book are engaging in "anonymous speech" simply by reading. The term "anonymous speech" more accurately refers to an *author's* choice to communicate or advocate positions anonymously. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 343 (1995)(observing First Amendment protections relating to "a respected tradition of anonymity in the advocacy of political causes" as reflected in publications such as *The Federalist Papers*).

Court must give consideration to the factual circumstances presented by this case, as well as the nature of the preliminary injunction, to evaluate what level of protection is appropriate. *In re Grand Jury Proceeding*, 842 F.2d 1229, 1236 (11th Cir. 1988)(government can engage in conduct that encroaches on First Amendment rights where it can demonstrate a "'substantial relation' to a compelling interest"). The more limited protections afforded commercial speech apply to anonymous speech. *In re Anonymous Online Speakers*, No. 09-71265, 2011 WL 61635, at *2 (9th Cir. Jan. 7, 2011).

In this case, the preliminary injunction is aimed at restricting the Defendants' persistent, false *commercial* speech, whether in the form of promoting the false federal tax benefits of sham trusts or in providing actual services to customers to realize those benefits. To that end, the preliminary injunction does not require that the Defendants cease selling The Art of Passing the Buck or edit its content. The Order does, however, require production of a list of purchasers of The Art of Passing the Buck so that the Government can determine if any such individuals have taken the next step of either creating a common law trust, or (as explicitly advertised in The Art of Passing the Buck) hiring the Defendants to help them accomplish this goal. (*See, e.g.,* excerpts from The Art of Passing the Buck advertising Defendants' services, a true copy of which is attached as Exhibit 1). Such information will aid the Government in gauging not only the scope of the Defendants' present commercial endeavors, but also in evaluating if individual taxpayers are themselves relying on the Defendants' advice to break the law.

Given the above, Paragraph G of the Preliminary Injunction Order does not infringe on any free speech rights associated with the decision to purchase or read the Defendants' publications. As noted in *United States v. Bell,* 414 F.3d at 485, "[p]roducing a customer list does not offend the First Amendment because

commercial transactions do not entail the same rights of association as political meetings." The Defendants' "readers" are not simply absorbing the Defendants' political views, but are engaging in a commercial transaction intended by the Defendants to attract business. As such, the Government has a compelling interest in learning the identities of such purchasers so that it can ensure the enforcement of the internal revenue laws. *Schulz,* 517 F.3d at 607-608 (disclosure of customers "enables the government to monitor whether the recipients of defendant's materials are violating the tax laws"); *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650-51 (1985) (where the activity at issue is commercial, the First Amendment is no barrier to warnings, disclaimers, and other "disclosure requirements" necessary to correct prior unlawful conduct and "prevent[] deception of consumers") ; see also *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114 (2d Cir. 2001) (mandated disclosure of accurate, factual, commercial information does not offend the First Amendment).

At bottom, purchasers of The Art of Passing the Buck may have every right (congruent with what the Seventh Circuit in *Benson* deemed the United States' "great tradition of tolerating nutty opinions,") to read anonymously the Defendants' publications simply for their political content. But the analysis changes where the publication in question has a commercial end aimed at violating the federal tax laws. Here, it unquestionably does, and therefore disclosure of a purchaser list is consistent with the intent of the Preliminary Injunction Order itself.

**2. The Defendants Present No Compelling Bases for Altering Paragraph B or C of the Preliminary Injunction**

The second portion of the Defendants' motion objects to the following provision of the Preliminary Injunction Order:

Pursuant to 26 U.S.C. §§ 7402 and 7408, the Defendants

11

> are preliminarily enjoined from acting in any advisory or participatory capacity in any way for any common-law trusts created by any of their customers, themselves, or any other parties in the past ten years and in which they have assisted in the creation or management in any way during the time period;

Preliminary Injunction Order, Paragraph C. Contrasting this language to Paragraph B of the Order (which explicitly prohibits enjoins the Defendants from promoting illegal common law trusts in violation of the Internal Revenue Code, and which the Defendants accept), the Defendants suggest that this provision is overbroad because it enjoins otherwise legal conduct. (Motion to Alter at 3, 7-8).

As with the Defendants' challenge to Paragraph G, this attack on Paragraph C attempts to argue matters the Defendants could have, and should have, raised before the Preliminary Injunction Order was granted. In its complaint and preliminary injunction motion papers, the Government set forth a panorama of misconduct warranting broad injunctive relief. As the Government alleged in detail, the Defendants were not only promoting sham trusts as a means of evading income taxation, but were also assisting their customers run these trusts, while advising them to resist IRS efforts to investigate trust activities through "oaths of silence," among other things. *See, e.g.,* Preliminary Injunction Motion (Docket No. 10-1) at 12-14. The Government contended in its motion - and substantiated with numerous declarations and evidence - that the Defendants did nothing but promote sham trusts with ***no legal legitimacy whatsoever***, and with a primary intent and effect of evading the federal tax laws.

The Defendants had a full and fair opportunity to question the scope of this particular provision (which was included in the draft order provided to them long before this Court ruled in the Government's favor). They could have offered evidence that their conduct has a legal or legitimate component. But beyond arguing that The Art of Passing the Buck is political speech, the Defendants utterly failed to rebut the

Government's specific factual evidence offered in favor of its motion - including a failure to offer facts demonstrating the scope and focus of their activities. The Defendants thus conceded their liability, and this Court's entry of injunctive relief thus properly included language prohibiting the Defendants from continuing to engage in such conduct during the pendency of this action. The Defendants should not be permitted to obtain Rule 59(e) relief based upon arguments that were waived in the course of litigating the underlying preliminary injunction motion.

There is nothing otherwise objectionable about Paragraph C that warrants alteration under the "clear error" or "manifest injustice" standards for Rule 59(e) relief. The Government's preliminary injunction motion substantiated a clear pattern of ongoing misconduct, in which Wycoff and Ozak charge for their services in creating or managing common law trusts - the sole purpose of which is tax evasion. Such assistance also includes instructing customers how to resist IRS efforts at investigating trusts. (Order at 8-9 (¶¶ 22-24)). The Defendants are affiliated with individuals who have been previously enjoined and even face criminal tax charges, like Frank DiLullo. (Preliminary Injunction Motion at 7). And they have their own history of frivolously resisting IRS summonses, in part through strike lawsuits against IRS personnel. (*Id.* at 12).

In short, Wycoff and Ozak cannot be trusted to abide by the law absent broad injunctive relief. And the only way to guarantee their compliance with the law while the case is pending is if they are barred from working with or assisting other trusts in any capacity. Given the unrebutted facts established by the Government, and accepted by this Court in entering injunctive relief, it is hardly unreasonable under the circumstances to include such a provision in the Preliminary Injunction Order. Such relief saves the Government the need to expend resources to monitor Ozak and Wycoff in the interim and determine if they are, or are not, breaking the law when

they work with common law trusts.  Paragraph C is preferable to simply warning the Defendants not to break the law while the case is pending, and then hoping they do so.

Accordingly, for the reasons stated herein as well as in the underlying preliminary injunction motion, the Government respectfully requests that this Court deny in its entirety the Defendants' Motion to Alter the Order of Preliminary Injunction.

April 15, 2011

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

DARWIN THOMAS
Ca. Bar No. 80745
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2740
Facsimile:   (213) 894-0115
Email: darwin.thomas@usdoj.gov

/s/ Brian H. Corcoran
BRIAN H. CORCORAN
Member, D.C. Bar, No. 456976
Admitted *Pro Hac Vice*
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Fax: (202) 514-6770
Brian.H.Corcoran@usdoj.gov

14

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 15, 2011, I served the foregoing *United States' Opposition to Motion to Alter Preliminary Injunction*, and all related papers, by first class mail service and electronic mail upon the following:

Gwenn H. Wycoff
Frank C. Ozak
2801 Ocean Park Blvd., No. 296
Santa Monica, California 90405

Counsel *Pro Se*

/s/ Brian H. Corcoran
BRIAN H. CORCORAN